**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Jesse Cornell SANDERS,**
**Defendant-Appellant.**

No. 84–1327.

United States Court of Appeals,
Fifth Circuit.

Dec. 11, 1984.

Before CLARK, Chief Judge, WISDOM and HIGGINBOTHAM, Circuit Judges.

PATRICK E. HIGGINBOTHAM, Circuit Judge:

Jesse Cornell Sanders, a Fort Worth pharmacist, appeals from his conviction on a multiple count indictment charging him with Medicaid fraud, violations of federal controlled substance laws and the federal tax laws.[1] He challenges his conviction on one ground only: that the district court improperly admitted into evidence as business records certain computer printouts of medical claims received, processed, and paid by the Texas Department of Human Resources. We conclude that the district court was correct in admitting the computer printouts and affirm.

## I

Beginning in 1975, Sanders owned and operated North Side Pharmacy, a drugstore in a low-income neighborhood in Fort Worth. The pharmacy served many families who were entitled to Medicaid benefits, and these benefits included three free prescriptions each month for each family member. The procedure for dispensing the free prescriptions was as follows: the Medicaid patient would have Sanders fill his prescription at no charge; Sanders would then list these prescriptions on Medicaid claim forms which he submitted to Southwestern Drug Company of Dallas to be keypunched onto magnetic tape for submission to the Texas Department of Human Resources in Austin;[2] upon receipt of the tape TDHR

Frank D. McCown, J. Don Carter, Fort Worth, Tex., for defendant-appellant.

James A. Rolfe, U.S. Atty., Ronald C.H. Eddins, Asst. U.S. Atty., Fort Worth, Tex., for plaintiff-appellee.

1. Sanders was indicted for eleven counts of violating the Medicaid fraud statute, 42 U.S.C. § 1396h; four counts of providing false information in controlled substance prescription files in violation of 21 U.S.C. § 843(a)(4); and two counts of subscribing to false tax returns under 26 U.S.C. § 7206(1).

2. Southwestern, one of several "service bureaus" authorized by TDHR to provide computer processing for welfare claims, had an agreement with North Side Pharmacy to provide such ser-

vices for Sanders' Medicaid claims. The fee for Southwestern's processing services ranged from ten to eighteen cents per claim and was paid by Sanders rather than TDHR. By using the service, Sanders could have his reimbursement claims processed much more rapidly than if he submitted longhand claim forms directly to the state. A letter from Sanders' pharmacy to TDHR provided in part:

Please consider this letter your authorization to recognize Southwestern Drug Company

would load the data into TDHR computers and have the computers verify certain information; finally, TDHR would mail a check to Sanders for the amounts claimed and indicate payment on its computer records. Sanders was charged with writing during the years 1978 through 1981 phony prescriptions, never filled, and submitting claims for reimbursement.

At trial, the government's evidence included computer records from TDHR which reflected the reimbursement claims submitted by Sanders and TDHR's payment of those claims. Ronnie Weiss, Director for Medical Claims Processing at TDHR, testified that such claims information is stored on TDHR computers for operational purposes and to serve as business records. The information is used by the Comptroller of Public Accounts, for example, to generate checks for payment of claims.

Exhibits 122–157 were composed of printouts of TDHR "Payment Registers" sent to Sanders for the years 1978 through 1981. A Payment Register is a printout periodically generated by the TDHR computers to show which claims are approved and how much is paid on each claim. All parties and prescriptions involved are listed by their TDHR code numbers, and copies of the printouts are sent with monthly checks to the pharmacist. Government Exhibit 158, another TDHR computer printout, was a "Provider Profile" containing the same information as the Payment Registers and listing all claims filed by Sanders from 1978 through 1981. The format of the Provider Profile was such that it was

more readable than the Payment Registers, however, because the names of the recipients and drugs prescribed were written out rather than listed by prescription and client numbers. The format also differed in that the claims were listed by Medicaid client rather than by order of submission to TDHR. Aside from these variations in format, both sets of computer printouts were simply graphical depictions of identical information retrieved from TDHR computers.

## II

Sanders challenges the district court's decision to admit these computer records as business records under Fed.R.Evid. 803(6).[3] He argues that the printouts were not business records but instead were mere summaries of inadmissible evidence prepared long after the events described and prepared for the purpose of investigation and trial rather than in the ordinary course of business. Sanders contends that to be properly admissible, the evidence should have been qualified under Fed.R.Evid. 1006 as summaries of evidence otherwise admissible and the jury should have been instructed on the use of summaries.

■ We disagree. The district court has broad authority to determine the admissibility of evidence under the business records exception, and we review such decisions under an abuse of discretion standard. *Capital Marine Supply, Inc. v. M/V ROLAND THOMAS II*, 719 F.2d 104, 106 (5th Cir.1983); *Rosenberg v. Collins*, 624 F.2d 659, 665 (5th Cir.1980). There

Center ... to act as our agent and representative in matters pertaining to our participation in the Texas Department of Public Welfare vendor program. We guarantee the authenticity of any claims submitted by Southwestern Drug Corporation in our behalf....

3. Fed.R.Evid. 803(6) provides:
The following are not excluded by the hearsay rule, even though the declarant is available as a witness:
(6) Records of regularly conducted activity. A memorandum, report, record, or data compilation, in any form, of acts, events, conditions, opinions, or diagnoses, made at or near the time by, or from information transmitted

by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record, or data compilation, all as shown by the testimony of the custodian or other qualified witness, unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness. The term "business" as used in this paragraph includes business, institution, association, profession, occupation, and calling of every kind, whether or not conducted for profit.

was no abuse of discretion here. As we noted in *Capital Marine Supply,*

> Computer business records are admissible if (1) they are kept pursuant to a routine procedure designed to assure their accuracy, (2) they are created for motives that tend to assure accuracy (*e.g.,* not including those prepared for litigation), and (3) they are not themselves mere accumulations of hearsay. (citations omitted).

719 F.2d at 106. Because the TDHR computer records meet these requirements, they were properly admitted as business records.

Steven Seidmier, the custodian of business records for Southwestern Drug, explained the routine procedures used at Southwestern to transfer the information from Sanders' Medicaid claim forms to magnetic tape. As part of these procedures the transposition of information from the claim forms was checked for accuracy by two Southwestern employees before the tape was submitted to TDHR. Ronnie Weiss of TDHR testified that the data from the magnetic tape prepared by Southwestern was then entered into TDHR computers for use in processing claims submitted by pharmacists such as Sanders. TDHR used the computer data to verify, among other things, that the Medicaid recipient identified in the claims had received no more than three prescriptions in a given month and that the drug sold was one for which TDHR authorized reimbursement. The Comptroller then used the information to generate reimbursement checks, and the data was thereafter maintained in TDHR computers for recordkeeping purposes. Such testimony established both that the computer data was prepared and kept pursuant to routine procedures and that the procedures were designed to assure accuracy of the records. Thus the first element for admissibility of computer records was satisfied.

As for the second element, Sanders' arguments that the printouts were records prepared for litigation are misplaced. The printouts themselves may have been made in preparation for litigation, but the data contained in the printouts was not so prepared. That information was recorded in Medicaid claim forms by Sanders or his employees shortly after Sanders supposedly filled the prescriptions, and Southwestern promptly recorded the information in a form acceptable to TDHR computers. TDHR then added a notation indicating payment at the time Sanders' claims were paid. No further additions or modifications were made to the data at any time after these transactions took place. Thus while the data was summoned in a readable form shortly before trial, it had been entered into TDHR computers "at or near the time" of the events recorded. It is not necessary that the printout itself be ordered in the ordinary course of business, at least when the program that calls forth the data only orders it out rather than sorting, compiling or summarizing the information.[4] As the Sixth Circuit has observed: "It would restrict the admissibility of computerized records too severely to hold that the computer product as well as the input upon which it is based, must be produced at or within a reasonable time after each act or transaction to which it relates." *United States v. Russo,* 480 F.2d 1228, 1240 (6th Cir.1973), *cert. denied,* 414 U.S. 1157, 94 S.Ct. 915, 39 L.Ed.2d 109 (1974). Thus neither the Provider Profile nor the Payment Registers were inadmissible as records prepared for litigation.

The final element necessary to admit the records is that they not be "mere accumulations of hearsay." The records at issue here were based on claims forms submitted by Sanders or his agents, and were not hearsay because the claims qualify as admissions under Fed.R.Evid. 801(d)(2)(C).

---

**4.** Although the program used to retrieve the data was not introduced at trial, Ronnie Weiss, the custodian of the claims records for TDHR, testified extensively about the manner of preparation of the printouts. His testimony makes it clear that neither the Payment Registers nor the Provider Profile were selective compilations of information; rather both contained all of the information TDHR possessed covering the claims Sanders submitted.

The notations TDHR added to the claims to indicate payment were made by its employees acting in the ordinary course of business. Thus, all participants in the preparation of the records meet the hearsay test. *Cf. Wright v. Farmers Co-op.*, 681 F.2d 549 (8th Cir.1982) (party's tape-recorded statement admissible as admission and business record). The computer records here are virtually indistinguishable from those ruled admissible under the former Business Records Act, 28 U.S.C. § 1732(a), in *United States v. Russo, supra. See also D & H Auto Parts, Inc. v. Ford Marketing Corp.*, 57 F.R.D. 548 (E.D.N.Y. 1973) (manufacturer's computer record summaries of auto parts orders submitted by parts distributor admissible as business record). The only basis for distinguishing the present case is the existence of a third party—Southwestern—in the chain creating the business record. Since Southwestern employees were authorized agents of Sanders acting in the ordinary course of business when transcribing his claims onto the magnetic tape, however, this extra link in the chain does not alter the status of the computer printouts as business records. Federal Rule of Evidence 801(d)(2)(C) includes statements made by agents authorized to speak concerning a subject as admissions by a party-opponent. *See, e.g., Reid Brothers Logging Co. v. Ketchikan Pulp Co.*, 699 F.2d 1292, 1306 (9th Cir. 1983) (report prepared by third party at request of defendant company admissible under Rule 801(d)(2)(C)). Here Southwestern was authorized to submit Medicaid claims for Sanders to TDHR. *See supra* note 2. Thus there were no hearsay problems barring the admissibility of the computer printouts. *See generally* 4 J. Weinstein & M. Berger, *Weinstein's Evidence* ¶ 803(6) [04] (1984).

Sanders' arguments that the computer business records were "mere summaries" not properly admitted under the requirements of Fed.R.Evid. 1006 [5] are also without merit. The format used in the TDHR printouts did not transform the computer business records into summary evidence. The Provider Profile was simply a retrieval of data stored in a manner meeting the requirements for the admission of business records; as discussed above, it was not a selective compilation of random pieces of data stored in TDHR computers but was instead a complete list of all information TDHR possessed relating to Sanders' claims. Since each claim was admissible as a business record, we think it of no consequence that all claims were listed in a single printout. *See United States v. Russo*, 480 F.2d at 1240 (computer printout/statistical record of insurance claims filed by doctors was admissible as a business record and was not a mere summary). As for the Payment Registers, identical printouts were used by TDHR in the ordinary course of business when TDHR periodically sent reimbursement checks to pharmacists such as Sanders. Both the Provider Profile and the Payment Registers were original records and not summaries.

In sum, both the Provider Profile and Payment Registers qualify as business records under Fed.R.Evid. 803(6) and were properly admitted at trial. Accordingly, the decision of the district court is AFFIRMED.

---

**5.** Fed.R.Evid. 1006 provides:

The contents of voluminous writings, recordings, or photographs which cannot conveniently be examined in court may be presented in the form of a chart, summary, or calculation. The originals, or duplicates, shall be made available for examination or copying, or both, by other parties at reasonable time and place. The court may order that they be produced in court.