**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Alfredo GARZA, Defendant-Appellant.**

No. 85–2854.

United States Court of Appeals,
Fifth Circuit.

Dec. 9, 1986.

Larry Warner (Court appointed), Port Isabel, Tex., for defendant-appellant.

Susan L. Yarbrough, James R. Gough, Jr., Asst. U.S. Attys., Houston, Tex., for plaintiff-appellee.

Before POLITZ, RANDALL and JOLLY, Circuit Judges.

PER CURIAM:

Alfredo Garza appeals his conviction of conspiring to harbor, harboring, and transporting illegal aliens on the ground that he was denied his sixth amendment rights to effective assistance of counsel and to a public trial and his fifth amendment right to due process of law because his attorney was excluded from the procedures to test the qualifications of the general venire. Without deciding Garza's constitutional claims, we affirm on the ground that Garza's failure to object to the exclusion of his counsel from the general qualification procedures precludes this court's review of those claims.

### I.

Alfredo Garza was convicted of one count of conspiracy to harbor aliens in violation of 18 U.S.C. § 371 and 8 U.S.C. § 1324(a), two counts of harboring aliens in violation of 8 U.S.C. § 1324(a)(3) and 18 U.S.C. § 2, and two counts of transporting aliens within the United States in violation of 8 U.S.C. § 1324(a)(2). Garza was sentenced to two concurrent five-year terms of imprisonment on the harboring counts, and three concurrent two-year terms of imprisonment on the conspiracy and transportation counts, which were to be served consecutively to the two concurrent five-year terms. On appeal, Garza alleges no errors

in his trial or sentencing, and does not attack the sufficiency of the evidence supporting his conviction.

Garza's only contention on appeal from his conviction is that reversible error was committed by the exclusion of Garza's counsel from the general procedures for the qualification of the venire panel. On November 5, 1985, the district court assembled the panel of prospective federal jurors. Garza's attorney attempted to enter the courtroom, but was denied admission by a deputy clerk on the ground that there were not enough seats for the members of the venire. At the general qualification procedure, the judge placed the prospective jurors under oath, explained the jury system to them, discussed the possible length of their jury service, questioned them concerning the statutory qualifications for jury duty, and administered the statutory oath for jury service.

Several jurors were questioned individually concerning whether they met the statutory qualifications for jury duty. In response to a question concerning membership in a police or fire department, one unidentified juror stated that she worked for a police department, but not as a police officer. The court declined to excuse the juror. In response to a question concerning literacy, one juror admitted to being unable to write, and was excused by the court. In response to the court's inquiries concerning mental or physical impairments, one juror stated that he was taking phenobarbital under instructions from his physician, but felt fit to serve as a juror. The court declined to excuse him. The court declined to excuse another prospective juror with an unspecified ailment whose physician would not give him a certificate stating that he could not serve as a juror. Finally, the court declined to excuse a juror suffering from diarrhea. The general venire was then split into four panels, from which actual juries were chosen. The panel from which Garza's jury was chosen was panel "B," and contained 49 prospective jurors.

It is undisputed that both Garza and his attorney were present during the voir dire and selection of Garza's jury from panel B. No objection was made at this time to the exclusion of Garza's attorney from the venire qualification procedures. During the voir dire, the district judge asked the jury all of the questions requested in writing by Garza's attorney, as well as questions that Garza's attorney verbally requested during the voir dire. A jury was selected, and trial commenced. Prior to the submission of the case to the jury, the district court dismissed three of the eight counts that Garza was charged with. As noted above, the jury found Garza guilty on all of the remaining counts, and the court imposed sentence. Still, Garza did not object to the exclusion of his attorney from the qualification of the general venire. It was not until more than two months after sentencing that Garza moved to supplement the record on appeal to reflect that his attorney was denied admission to the courtroom during the general qualification procedures. The district court granted this motion, specifically noting that this matter was not called to the district court's attention.

## II.

Despite his failure to object at trial, Garza argues on appeal that the exclusion of his attorney from the qualification procedures violated Garza's right to effective assistance of counsel and to a public trial as guaranteed by the sixth amendment, and his right to due process of law as guaranteed by the fifth amendment. Garza argues, as he must, that this exclusion of counsel constituted plain error which this court may notice on appeal, despite Garza's failure to object at trial. *See* Fed.R.Civ.P. 52(b). In response, the government argues that the general qualification procedure was not a critical stage of the proceedings at which Garza would have the right to the presence of counsel, and that, in any case, Garza waived whatever rights that he might have had by his failure to object.

Before this court could consider Garza's constitutional claims, it would first have to determine that the alleged error constitutes plain error which this court can notice in the absence of objection below. The plain error doctrine is contained in Rule 52(b) of the Federal Rules of Criminal Procedure, which provides that "[p]lain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." In undertaking the required plain error analysis, we turn to the most recent teaching of the Supreme Court on this subject. In defining "plain error," the Supreme Court has stated:

> The plain-error doctrine of Federal Rule of Criminal Procedure 52(b) tempers the blow of a rigid application of the contemporaneous-objection requirement. The Rule authorizes the Courts of Appeals to correct only "particularly egregious errors," those errors that "seriously affect the fairness, integrity or public reputation of judicial proceedings." In other words, the plain-error exception to the contemporaneous-objection rule is to be "used sparingly, solely in those circumstances in which a miscarriage of justice would otherwise result." Any unwarranted extension of this exacting definition of plain error would skew the Rule's "careful balancing of our need to encourage all trial participants to seek a fair and accurate trial the first time around against our insistence that obvious injustice be promptly redressed."

*United States v. Young,* 470 U.S. 1, 15, 105 S.Ct. 1038, 1046–47, 84 L.Ed.2d 1 (1985) (citations and footnotes omitted). The Supreme Court also cautioned that

> [a] *per se* approach to plain-error review is flawed. An error, of course, must be more than obvious or readily apparent in order to trigger appellate review under Federal Rule of Criminal Procedure 52(b).... [F]ederal courts have consistently interpreted the plain-error doctrine as requiring an appellate court to find that the claimed error not only seriously affected "substantial rights," but that it had an unfair prejudicial impact on the

jury's deliberations. Only then would the court be able to conclude that the error undermined the fairness of the trial and contributed to a miscarriage of justice. To do otherwise could well lead to having appellate courts indulge in the pointless exercise of reviewing "harmless plain errors"—a practice that is contrary to the draftsmen's intention behind Rule 52(b) ... and one that courts have studiously avoided and commentators have properly criticized.

*Young,* 470 U.S. at 17 n. 14, 105 S.Ct. at 1047 n. 14 (citations omitted); *see also United States v. Thetford,* 676 F.2d 170, 180 n. 19 (5th Cir.1982), *cert. denied,* 459 U.S. 1148, 103 S.Ct. 790, 74 L.Ed.2d 996 (1983) ("[p]lain error exists only if it affects substantial rights of a party so basic that the infraction can never be treated as harmless error"). Hence, under the two-part test set out in *Young,* in order for an error to constitute "plain error," it must (1) seriously affect substantial rights and (2) have an unfair prejudicial impact on the jury's deliberations. Failure to meet either prong of this test precludes review under the plain error doctrine. We find that we need not decide the issue of whether the sixth amendment requires the presence of either the defendant or his counsel at the procedure for the qualification of the general venire, or whether the qualification procedure is a part of the "trial" for the purpose of the sixth amendment right to a public trial. Furthermore, we find that it is also unnecessary to decide the issue of whether the exclusion of Garza's counsel from the qualification procedure amounted to a denial of due process of law as guaranteed by the fifth amendment. We need not decide these issues because, even were we to decide that these claims involved "substantial rights" which were "seriously affected," we could not find on this record that Garza was prejudiced by the alleged error of excluding his counsel from the venire qualification procedures. Hence, even if Garza met the "substantial rights" prong of the plain error test, he still could

not meet the prejudice requirement necessary to invoke the plain error doctrine.[1]

■ According to Garza's brief, he was prejudiced by the exclusion of counsel from the general qualification procedures because (1) counsel could have checked the accuracy of the oaths administered to the jurors, (2) counsel could have objected to the exclusion of the one venire member who was unable to write, and (3) counsel could have noted the juror who worked for a police department, the juror taking medication, and the juror with diarrhea, and considered this information in exercising peremptory challenges. On the issues of whether the statutory oath was properly administered and Garza's possible objection to the excusal of the juror who could not write, we note that this court has declined to find plain error in cases involving far more serious claims of error relating to the qualifications of jurors. This court has stated that "'[w]here the objection to a juror relates, not to actual prejudice or other fundamental incompetence, but to a statutory disqualification only, such disqualification is ordinarily waived by failure to assert it until after verdict, *even though the facts which constitute the disqualification were not previously known to the defendants.*'" *United States v. Gates*, 557 F.2d 1086, 1088 (5th Cir.1977), *cert. denied*, 434 U.S. 1017, 98 S.Ct. 737, 54 L.Ed.2d 763 (1978) (failure to object to trial court's failure to ascertain that all jurors were literate) (quoting *Ford v. United States*, 201 F.2d 300, 301 (5th Cir.1953)) (emphasis supplied).

This leaves, then, only Garza's vague claim that his attorney could have noted the juror that worked for a police department, the juror on medication, and the juror with diarrhea, for the purpose of exercising his peremptory challenges. Assuming that Garza was prejudiced by his counsel's lack of this information, an assumption we question given Garza's lack of specificity on how it would have affected his counsel's exercise of his peremptory challenges, we think that this is the sort of prejudice that falls far short of that necessary to bring the plain error doctrine into play. Furthermore, we note the absence of any allegation by Garza that the three jurors that were questioned by the district judge actually appeared on Garza's venire panel, or served on the jury that convicted Garza.

Having disposed of Garza's specific claims of prejudice, we look to the record as a whole to determine if Garza was prejudiced by the exclusion of his attorney from the qualification procedures. "When applying the plain error rule, a reviewing court can properly evaluate a case only if it views the claim of prejudice against the entire record." *United States v. Brooks*, 786 F.2d 638, 642 (5th Cir.), *cert. denied*, —— U.S. ——, 107 S.Ct. 193, 93 L.Ed.2d 126 (1986). We conclude that Garza's guilt of the offenses for which he was convicted is amply supported by the evidence, and indeed, at no point in his brief to this court does he allege his innocence. It is clear from the record that the alleged prejudice resulting from counsel's exclusion is harmless at worst, and is therefore clearly insufficient under the test set out in *Young* to entitle Garza to invoke the plain error doctrine.

■ Finally, in his brief to this court, Garza argues that his failure to object was due in part to the futility of an objection after the qualification procedure was concluded. At that point, Garza argues, there is nothing that the trial court could have done to remedy the error. We find this argument without merit. Had Garza objected, the district court could have simply dismissed the entire venire and continued Garza's trial until another general venire could be assembled. Certainly, had the district court done this, Garza would have no further ground for objection. A criminal defendant is not entitled to any particular juror, and is certainly not entitled to

---

1. While we decline to decide the constitutional issues urged upon us in this appeal, we do express our belief that the better practice would be to permit counsel to attend the general qualification procedure for the venire.

**398**

any particular pool of potential jurors. Hence, we reject Garza's argument that any objection would have been futile.

### III.

We cannot conclude that the error that Garza alleges seriously affected the fairness, integrity or public reputation of his trial or resulted in a miscarriage of justice. We therefore AFFIRM Garza's conviction.