**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Mary HUTSON, Defendant-Appellant.**

**No. 86–2836.**

United States Court of Appeals,
Fifth Circuit.

June 30, 1987.

Marjorie A. Meyers, Asst. Atty. Gen., Roland E. Dahlin, II, Federal Public Defender (Court-appointed), Margaret T. Price, Asst. Federal Public Defender, Houston, Tex., for Mary Hutson.

Frances H. Stacy, Asst. U.S. Atty., Henry K. Oncken, U.S. Atty., Linda Lattimore, James R. Gough, Asst. U.S. Attys., Houston, Tex., for U.S.

Before WRIGHT,* GEE, and JOLLY, Circuit Judges.

EUGENE A. WRIGHT, Circuit Judge.

Hutson appeals her convictions under 18 U.S.C.A. § 656 (West 1976) for embezzlement. She asks us to decide (1) who bears the burden of proof at a retrospective competency hearing, (2) whether the admission of hearsay on the issue of competency constitutes reversible error, (3) whether computer records were properly admitted under the business records exception, (4) whether the government's evidence was constitutionally sufficient, and (5) whether prosecutor misconduct requires reversal. We remand for a competency hearing, but otherwise affirm.

**BACKGROUND**

Mary Hutson was vice president and cashier at Navigation Bank in Houston, Texas. In March 1984, the bank president noticed errors in her reports and assigned another employee to straighten things out. An investigation disclosed that Hutson had juggled computer entries, drawn counter checks on invalid accounts, and cashed fundless cashier checks and money orders. She was fired in May 1984.

In a 107 count indictment filed in November 1985, Hutson was charged with embezzlement. The case was assigned to Judge Bue, and 14 counts were dismissed.

On February 7, 1986, Hutson filed a notice of intent to present an insanity defense and in March she requested a competency hearing. She was adjudged incompetent and committed to the federal correctional facility at Lexington, Kentucky for psychological evaluation and treatment.

On May 30, her treating psychiatrist, Dr. Eardley, reported that Hutson was competent to stand trial. She was released on bond and trial was set for August 12. The case had been reassigned to Judge Hittner. No further competency findings were made.

The jury returned guilty verdicts in all but one of the remaining 93 counts. Hutson was sentenced to various terms of im-

* Circuit Judge of the Ninth Circuit, sitting by designation.

prisonment, most to run concurrently, for a total of ten years.

**ANALYSIS**

We address first the district court's failure to hold a second competency hearing. We then proceed to address the other alleged errors. *See United States v. Makris,* 483 F.2d 1082, 1084 (5th Cir.1973) (*Makris I*), *cert. denied,* 415 U.S. 914, 94 S.Ct. 1408, 39 L.Ed.2d 467 (1974).

### I. Failure to Conduct Second Competency Hearing

■ The district court erred by proceeding to trial without making a second competency determination. 18 U.S.C.A. § 4241(e) (West.Supp.1986); *United States v. Fessel,* 531 F.2d 1275, 1277 n. 4 (5th Cir.1976). This failure does not, however, mandate reversal of the conviction. *Makris I,* 483 F.2d at 1091. Hutson's substantive rights were affected only if she was actually incompetent at the time of trial. *Id.* Her procedural rights may be vindicated by a meaningful retrospective hearing. Thus we remand to the district court for determinations as to whether a meaningful retrospective competency hearing can be held, *see Bruce v. Estelle,* 536 F.2d 1051, 1056–57 (5th Cir.1976), *cert. denied,* 429 U.S. 1053, 97 S.Ct. 767, 50 L.Ed.2d 770 (1977), and, if it can, whether Hutson was competent to stand trial, *id.* at 1059.

■ On the first issue, the state bears the burden of showing that the "tools of rational decision are available," *Lokos v. Cupp,* 625 F.2d 1258, 1268 n. 5 (5th Cir. 1981). The quantity and quality of available evidence must be such that the competency assessment can be labelled as more than mere speculation. *Wheat v. Thigpen,* 793 F.2d 621, 630 (5th Cir.1986), *cert. denied,* —— U.S. ——, 107 S.Ct. 1566, 94 L.Ed.2d 759 (1987).

If a meaningful hearing can be held, the state also bears the burden of proof on the issue of competency. In this direct attack, the state must prove by a preponderance that Hutson was competent to stand trial when she did. *Lowenfield v. Phelps,* 817 F.2d 285, 294 (5th Cir.1987); *United States v. Makris,* 535 F.2d 899, 906 (5th Cir.1976) (*Makris II*), *cert. denied,* 430 U.S. 954, 97 S.Ct. 1598, 51 L.Ed.2d 803 (1977). If the state fails to meet either of its burdens, the court must grant Hutson a new trial if she is later found competent. *Makris I,* 483 F.2d at 1092.

### II. The Admission of Hearsay Concerning Competency

Hutson claims errors in the admission of certain testimony by pretrial services officer Espinosa. He testified that Hutson was apparently found competent by doctors at the Lexington facility where she was sent for evaluation. Defense counsel's hearsay objection was overruled.

On redirect, defense counsel attempted to clarify matters by asking whether Judge Bue had found Hutson incompetent. Espinosa was unsure, but volunteered that the judge had been concerned about blackmail. The prosecutor, on recross, asked Espinosa to elaborate. Espinosa said, "The court didn't want to just let go of the case ... simply on a threat of a person doing himself in." Defense counsel failed to object.

Hutson now argues that these statements were inadmissible under the hearsay rule and 18 U.S.C.A. § 4241(f) (West 1985).

■ Espinosa's hearsay statement that Hutson was apparently found competent should not have been admitted. Three experts, however, provided voluminous testimony on the issue of her sanity at the time she committed the offenses. In light of this testimony, the hearsay was cumulative and its admission harmless. *See Martin v. Wainwright,* 770 F.2d 918, 933 (11th Cir.1985); *United States v. Hunt,* 478 F.2d 357, 359 (9th Cir.), *cert. denied,* 414 U.S. 850, 94 S.Ct. 142, 38 L.Ed.2d 99 (1973). Espinosa's other statement, concerning blackmail, is not error of such magnitude that we will notice it for the first time on appeal. *See* Fed.R.Crim.P. 52(b); *United States v. Garza,* 807 F.2d 394, 396 (5th Cir.1986).

■ Similarly, Hutson did not object to Espinosa's statements as being inadmissi-

ble under 18 U.S.C.A. § 4241(f).[1] The plain error rule applies. Fed.R.Crim.P. 51, 52(b); *United States v. Arteaga-Limones*, 529 F.2d 1183, 1190 (5th Cir.), *cert. denied*, 429 U.S. 920, 97 S.Ct. 315, 50 L.Ed.2d 286 (1976). Espinosa's first statement implicates the doctor's findings, not those of the court. We have held that the exclusionary rule of section 4244, the predecessor of section 4241(f), applies only to findings by the trial judge. *United States v. Fortune*, 513 F.2d 883, 888 (5th Cir.), *cert. denied*, 423 U.S. 1020, 96 S.Ct. 459, 46 L.Ed.2d 393 (1975). The parties have not shown and we find no indication that Congress intended the law to be changed by the reenactment of section 4244 as section 4241(f). *Fortune* applies and the exclusionary rule did not apply.

■ We reject also Hutson's argument that Espinosa's "blackmail" testimony constitutes plain error under section 4241(f). Hutson relies on *United States v. Davis*, 496 F.2d 1026, 1029 (5th Cir.1974), where this court held that admission of the court's order declaring the defendant competent was plain error. *Davis* is inapposite. Hearsay testimony that a judge is concerned about being blackmailed by the defendant threatening suicide simply is not equivalent to a finding of competency by the court. While district courts must be vigilant in minimizing unnecessary references to competency, *Fortune*, 513 F.2d at 888, no reversible error occurred here.

1. 18 U.S.C.A. § 4241(f) states: "A finding by the court that the defendant is mentally competent to stand trial ... shall not be admissible as evidence in a trial for the offense charged."

2. Federal Rule of Evidence 803(6), in setting forth an exception to the hearsay rule, states in relevant part: "A memorandum, report, record, or data compilation, in any form, of acts, events, conditions, opinions, or diagnosis, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record, or data compilation, all as shown by the testimony of the custodian or other qualified witness, unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness."

## III. The Admissibility of the Computer Records

Hutson challenges the court's admission of several computer records. She alleges that the proper foundation for admission under Federal Rule of Evidence 803(6) and (7) was not laid.[2]

■ Computer records are admissible if the requirements of Rule 803(6) have been met. *United States v. Young Brothers, Inc.*, 728 F.2d 682, 693 (5th Cir.), *cert. denied*, 469 U.S. 881, 105 S.Ct. 246, 83 L.Ed.2d 184 (1984). We use an abuse of discretion standard on review. *Theriot v. Bay Drilling Corp.*, 783 F.2d 527, 532 (5th Cir.1986).

■ Hutson argues first that the government failed to establish that the records were not mere accumulations of hearsay and, thus, inadmissible. *See United States v. Sanders*, 749 F.2d 195, 198 (5th Cir.1984). She says that custodian Bradstreet's lack of familiarity with Interfirst Bank's computing system resulted in a failure of the government's proof.

We reject the argument. Interfirst compiled the records at issue from Navigation's business records. Because the records from which the computer records were made were themselves business records, there was no accumulation of inadmissible hearsay.[3] *Cf. id.* (business records compiled from Federal Rule of Evi-

Federal Rule of Evidence 803(7) sets forth another exception: "Evidence that a matter is not included in the memorandum, reports, records, or data compilations, in any form, kept in accordance with the provisions of paragraph (6), to prove the nonoccurrence or nonexistence of the matter, if the matter was of a kind of which a memorandum, report, record, or data compilation was regularly made and preserved, unless the sources of information or other circumstances indicate lack of trustworthiness."

3. Hutson seizes on Bradstreet's testimony that Interfirst obtained its information "from the checks or *any input* that is put into the computer" to show that hearsay may have been relied upon for the computer records. The record makes it clear that Bradstreet was referring to other business records from Navigation Bank.

dence 801(d)(2)(C) admissions are not accumulated hearsay). There is no requirement, as Hutson seems to contend, that the witness laying the foundation be the one who entered the data into the computer or be able to attest personally to its accuracy, *Theriot*, 783 F.2d at 533 (citation omitted), or that the records be prepared by the business having custody of them. *Miss. Grain Elevator, Inc. v. Bartlett & Co., Grain*, 659 F.2d 1314, 1319 (5th Cir.1981).

■ Second, Hutson asks reversal because some records were not shown to have been "made at or near the time" of the business transaction. *See* Fed.R.Evid. 803(6). Each printout had a date that showed when it was printed. This date was, in at least one case, seven to eight months after the business transactions took place. However, each printout showed also the date that the recorded banking transaction took place. This is sufficient for the purposes of Rule 803(6). *See Sanders*, 749 F.2d at 198 (citation omitted).

■ Third, Hutson argues that the printouts are not trustworthy enough to be admitted under Rule 803(6) or (7). She argues that the evidence showing that she manipulated the computer records, coupled with the fact that not all of the missing funds have been accounted for, make the printouts untrustworthy. Bradstreet testified that access to the computer was limited by the use of a special code.

This court rejected a similar argument in *United States v. Tafoya*, 757 F.2d 1522 (5th Cir.), *cert. denied*, — U.S. —, 106 S.Ct. 252, 88 L.Ed.2d 259 (1985). Evidence in *Tafoya* showed that billing memoranda were sometimes falsified. *Id.* at 1528–29. This court found the evidence admissible under Rule 803(6). *Id.* at 1529. The district court is given great latitude on the issue of trustworthiness. *Miss. Grain Elevator, Inc.*, 659 F.2d at 1319. Since access to the computer was restricted, we affirm the district court's admission of the computer records.

## IV. Sufficiency of the Evidence

■ Hutson challenges the sufficiency of the evidence on counts 44 to 48 and count 50. All involved the conversion of cashier's checks that did not bear her signature. She argues that the government failed to prove beyond a reasonable doubt that she was the person who converted these checks.

We view the evidence in the light most favorable to the government and will affirm if substantial evidence supports the convictions, that is, if a reasonable jury could have found guilt beyond a reasonable doubt. *United States v. Livingston*, 816 F.2d 184, 192 (5th Cir.1987) (citation omitted).

All of the checks in question were purportedly signed by Janet Slayton who testified that she had not signed them. Bradstreet, a bank employee, testified that the signatures on the checks in question looked like Hutson's. Hutson intercepted and concealed all of these checks when they were returned to the bank.

The government's remaining evidence on the challenged counts may be summarized: Count 44: The check was payable to and supposedly endorsed by Hutson's mother. Count 45: Sakowitz, a local store, was the payee. Hutson had cashed six other fundless checks there. Count 46: Saks was the payee. At least one other check had been given to Saks showing Hutson as the remittor. Count 47: Houston First American Savings was the payee. At least one other check to Houston First showed Hutson as the remittor. Count 48: Houston First was the payee. Hutson was the remittor. Count 50: Saks was the payee. Hutson was shown as the remittor.

We find the evidence was constitutionally sufficient.

## V. Prosecutor Misconduct

■ Hutson argues that the prosecutor repeatedly and deliberately misstated the law concerning the insanity defense. She argues that the judge's instructions, telling

the jury that the attorney's arguments were not law, did not adequately cure the resulting prejudice and requests a new trial. The government says the error, if any, was harmless.

"In evaluating allegations of such prosecutorial misconduct, the 'test ... is whether the remarks were improper and whether they prejudicially affected substantial rights of the defendant[]' ". *United States v. Nixon*, 816 F.2d 1022, 1031 (5th Cir.1987) (quoting *United States v. Dorr*, 636 F.2d 117, 120 (5th Cir.1981)).

This prosecutor said repeatedly that "A person is sane if they understand the difference between right and wrong and they are not induced to do something by an irresistible compulsion to do it." The prosecutor's test is the much criticized *M'Naghten* test supplemented with the irresistible impulse rule. 1 W. LaFave & A. Scott, *Substantive Criminal Law* § 4.2 (1986). Although it is not entirely clear what test should have been applied in this case, the *M'Naghten*/irresistible impulse test was clearly not applicable. The argument was improper. *See United States v. Phillips*, 664 F.2d 971, 1030 (5th Cir.1981) ("A prosecutor is ... forbidden to make improper suggestions, insinuations and assertions calculated to mislead the jury."), *cert. denied*, 457 U.S. 1136, 102 S.Ct. 2965, 73 L.Ed.2d 1354 (1982). Since the correct law was in the government's brief, the error could have been deliberate.

■ But the *Dorr* test requires reversal only if substantial rights of the defendant were prejudiced. *Cardenas*, 778 F.2d at 1130. In other words, a harmless error analysis applies. In determining whether a prosecutor's misconduct was harmless, we "may consider the prejudicial statements themselves, the efficacy of any cautionary instructions given by the district court, and the strength of the admissible evidence of guilt." *United States v. Livingston*, 816

F.2d 184, 195 (5th Cir.1987). In cases such as this, we must also consider evidence of sanity. We give considerable weight to the district court's assessment of the prejudicial effect of the remarks, and view the remarks in the context of the whole trial. *Cardenas*, 778 F.2d at 1130.

The remarks in question, while misstating the law, bore some resemblance to the correct law. The defendant's objections were followed by an instruction from the court that said the court, not the attorneys, would instruct on the law to be applied. The court properly instructed the jury before it retired. The jurors were given copies of the instruction for use during their deliberation. The evidence of guilt was overwhelming. There was ample evidence of sanity. While it would have been preferable for the court to instruct on the correct law at the time of the defendant's objections, the misstatements, viewed in the context of the entire trial, constitute harmless error.

**CONCLUSION:**

We remand for a competency hearing. If the district court finds it is able to conduct a meaningful retrospective hearing, and then determines that Hutson was competent when she was tried, the convictions are affirmed. If a meaningful hearing cannot be held, or if it is found that Hutson was incompetent at her trial, she can be retried only after she is properly found competent.