## Sells
## v.
## Miles Homes of Ohio, Inc.
*[Cite as 3 AOA 125]*

*Case No. 18-CA-89*
*Fairfield County, (5th)*
*Decided May 25, 1990*

*H. James Stevenson, 301 East Main Street, Lancaster, Ohio 43130, for Plaintiffs-Appellees.*

*Teri G. Rasmussen, 41 South High Street, Columbus, Ohio 43215, for Defendant-Appellant.*

MILLIGAN, P.J.

On August 13, 1975, appellees, Martin and Peg Sells, bought a home from appellant, Miles Homes of Ohio, Inc. Contemporaneous with the purchase agreement, the Sells executed and delivered to Miles Homes a promissory note for the purchase price of the home. The note was secured by a mortgage granting Miles Homes a lien on the property. Mortgage Record Vol. 376, p. 462, Fairfield County Recorder's Office.

The purchase agreement provided that the Sells had an option to purchase on a credit basis from Miles Homes various building supplies to be affixed to the home. Article IV, Purchase Agreement. The additional cost of these materials to be added to the purchase price. The mortgage deed echoed this provision in its "open end feature" which authorized and secured future advances by Miles Homes to the Sells not to exceed $29,000.00.

On December 16, 1986, the Sells sought a declaratory finding that the open end mortgage provision invalidated the mortgage lien because it failed to comply with R.C. 5301.32(A). Miles Homes answered the complaint and counterclaimed seeking foreclosure on the property. The Fairfield County Common Pleas Court held the open end mortgage provision to be valid but found Miles Homes failed to prove any balance due on the note and mortgage, declaring the note paid in full. Miles Homes appeals:

"I. THE TRIAL COURT'S DECISION DECLARING THE PROMISSORY NOTE EXECUTED AND DELIVERED BY THE SELLS TO MILES HOMES PAID IN FULL AND HOLDING THAT MILES HOMES FAILED TO PROVE ANY BALANCE DUE ON SAID PROMISSORY NOTE AND THE MORTGAGE SECURING SAME WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

"II. THE TRIAL COURT COMMITTED REVERSIBLE PREJUDICIAL ERROR IN FAILING TO ADMIT THE PRINCIPAL REDUCTION ACCOUNT RECORD MARKED AS DEFENDANT'S EXHIBIT C, AS A "BUSINESS RECORD."

## II

In its attempt to prove the amount of the balance due, appellant offered a document labeled Exhibit "C" called "Principal Reduction Account Record." This exhibit is a handwritten, ledger-style copy of payments and additions that

have been made to Sells' account and retrieve from the Miles Homes computer. T. at 40. Appellant's witness, Leo Flynn, manager of the property's department for Miles Homes, testified:

"Q: (By Ms. Rasmussen) Mr. Flynn, when we began your testimony, did you -- let me just ask it this way: In addition to being familiar with this account, are you in fact the custodian of the records with respect to this account?

"A: I do not personally prepare these records, no; but I am responsible for the people that do. I don't personally enter these. It's just physically impossible to monitor 5,000 accounts like this. But I do have supervisory capacity over those people.

Q: The people who do enter these accounts, what information "are they working from when they make these entries?

"A: As an example, if a payment comes in, we have a physical check, the money order, what have you. As far as the invoice in concerned, when the invoice is delivered by the supplier of the material or by our delivery assistance people.

"Q: When the invoice comes in, the person sees the invoice. They go [to] the account to which it relates, and what do they do?

"A: It gets entered into the system, what I call it. It goes on the computer today. Years ago of course it was manual. Today it's all computerized.

"Q: But it was always done at the time that the invoice came out or the check came in?

"A: Yes, that's right.

"Q: And is it the normal practice of Miles Homes in all of its various forms to do this each and every time a payment or an invoice comes in?

"A: Yes. It may not be the same day, but it again depends upon the volume of the day. Some days it's a day lag, sometimes it's the same day, sometimes it's a two-day lag. But as it is processed, it is processed on the account.

"Q: And there are people who work for Miles Homes whose job it is to do this?

"A: That is correct.

"Q: It's not an unusual sort of thing, you don't hire extra people to do it when you take a case to court, you do it every time?

"A: This is just a regular business transaction, yes.

"Q: Day in and day out?

"A: Day in and day out."

" . . .

[Objection made by defendant.]

"Q: (By Ms. Rasmussen) Mr. Flynn, going to the question that we keep trying to get to. Can you tell us based on these records before you, what has been marked for identification as Defendant's Exhibit C, was the amount due and owing is?

"A: As of December 15, 1988 --

"Q: December or September?

"A: I'm sorry, September. The balance due is $23,651.57." T. 41-46."

Appellant claims the trial court erred in excluding Exhibit "C" from evidence because it fully complies with Evid. R. 803(6).

Evid. R. 803:

"(6) *Records of regularly conducted activity.* A memorandum, report, record, or data compilation, in any form, of acts, events, or conditions, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record, or data compilation, all as shown by the testimony of the custodian or other qualified witness or as provided by Rule 901(B)(10), unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness. The term "business" as used in this paragraph includes business, institution, association, profession, occupation, and calling of every kind, whether or not conducted for profit."

Evid. R. 803(6) does not require the foundation witness be the person who entered the data into the computer. *State v. Knox* (1984), 18 Ohio St. 3d 36, 480 N.E. 2d 120. (Telephone company's computer printouts admissible under 803(6) regarding telephone harassment complaints. The court found installing computerized traps is a regular business activity of the security department, and security department's manager lays a foundation by testifying as to department policies and procedures although not the immediate custodian of the data compilation. *Hardesty v. Corrova* (1986), 27 Ohio App. 3d 332, 501 N.E. 2d 81 ("It is not necessary to present testimony of person who made actual postings in order to authenticate account record for purposes of business record exception to hearsay rule. Rules of Evid., Rule 803(6)."). See also *United States v. Hudson* (5th Cir., 1987), 821 F.2d 1015. When a witness is used to lay foundation for admitting records under the business record exception, all that is required is the witness be familiar with the record-keeping system. *U.S. v. Hathaway* (6th Cir. 1986), 798 F.2d 902.

We find Mr. Flynn's testimony adequately lays the foundation in qualifying him to testify that Exhibit "C" is a business record under Evid. R. 803(6). The exhibit qualifies as a business record within the rule.

Appellant's second assignment of error is sustained.

I

Appellant claims that despite the exclusion of Exhibit "C" it proved the balance due on the note and mortgage.

Reviewing the record we find Exhibit "B" which was offered at trial by appellant and accepted by the trial court as evidence. This exhibit has actual invoices issued to Miles Home from Martin G. Sells for various building supplies dating from October 22, 1975, to March 23, 1986. Witness Leo Flynn testified:

"Q: Picking up where you left off before the recess, Mr. Flynn, I think you've testified already that there is some correlation between Exhibit C, which is the Principal Reduction Account Record, and Exhibit D [sic], which is a notebook. Can you tell us what the relationship is between those two?

"A: The notebook correlates to the records on the Principal Reduction Account Record.

"Q: What do you mean when you say that?

"A: The notebook has backup for each entry on the Principal Reduction Account Record, with the exception of attorneys' fees and freight charges.

"Q: What kind of backup are we talking about?

"A: Either an invoice from the supplier or a invoice signed by Mr. and Mrs. Sells.

"Q: When these additions, these advances for additions were made, did it matter to the company that there was a mortgage?

"A: Yes, it did.

"Q: And how was that?

"A: We relied on our mortgage for the advances." T. at 52.

Based on the above evidence, we find Miles Homes maintained its burden of proving the allegations of its complaint, including appellees' indebtedness to it. However, we find no evidence to support appellees' affirmative defense of payment. *Zeigler Milling Co. v. Denman* (1946), 79 Ohio App. 250, 72 N.E. 2d 686; *Allen, et al. v. Everly, et al.* (1873), 24 Ohio St. 97. Mrs. Sells was asked:

"Q: Do you know how much you've paid them all together?

"A: $23,350.00 some dollars.

"Q: $23,350.00 some dollars?

"A: I can't remember exactly.

"Q: Okay." T. at 22-23.

On cross-examination, Mrs. Sells further testified:

"Q: Isn't it the case that the time before May, the last payment you made before that was in February?

"A: Yeah, something like that.

"Q: So you're not really sure exactly when you made the payments?

"A: My husband does the book work.

"Q: So would he know?

"A: I don't know if he remembers or not.

"Q: Okay. But I would have to ask him, you wouldn't know?

"A: No, not right offhand." T. at 25-26.

Mr. Sells testified:

"Q: What's the total amount of the payment that you've made to Miles Home?

"A: 23-4 something. I don't know. It's over 23.

"Q: Is it 23 or 24, 22?

"A: About $23,400.00, something like that.

"Q: How do you know that that's the right number?

"A: Well, because I seen it.

"Q: Did your attorney show you that number?

"A: No.

"Q: Was it because you saw it on what we've been talking about here today?

"A: No, I just -- well, she [Mrs. Sells] repeated it yesterday.

"Q: Okay. So you know it because she said that was the right number?

"A: Yeah.

"Q: You don't know whether that's the right number?

"A: Not for sure, no.

"Q: Okay. But she's generally reliable?

"A: Uh-huh. and that's what everybody that testified up here said we owed -- we've paid on it.

"Q: So --

"A: What I heard here, yes.

"Q: So you think that's the right number because that's what other people have told you is the right number.

"A: That's right, sure. " T. at 106-107.

Appellant's first assignment of error is sustained.

The judgment of the Fairfield County Common Pleas Court is reversed, and this cause is remanded to that court for new trial according to law.

*Judgment reversed and cause remanded.*

HOFFMAN, J., and GWIN, J., concur.