# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

November 16, 2007

Charles R. Fulbruge III
Clerk

No. 06-40674
Summary Calendar

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

LOU GENE SWARN; WAYMAN AUDRA GOODLEY,

Defendants-Appellants.

Appeal from the United States District Court
for the Eastern District of Texas
6:05-CR-67-3

Before HIGGINBOTHAM, STEWART, and OWEN, Circuit Judges.

PER CURIAM:[*]

Defendants-Appellants Lou Gene Swarn and Waymon Audra Goodley (collectively, "Defendants") appeal their convictions and sentences arising out of a conspiracy to purchase cocaine. Finding no reversible error, we affirm.

I.    FACTUAL AND PROCEDURAL BACKGROUND

Swarn and Goodley, along with co-defendant Finel Andre Brown, were indicted on August 2, 2005 for one count of conspiracy with intent to distribute

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

cocaine, in violation of 21 U.S.C. § 846 and for two counts of use of a communication facility in furtherance of the conspiracy in violation of 21 U.S.C. § 843(b). Brown pled guilty and agreed to testify against the Defendants at trial pursuant to a plea agreement. The Defendants were tried together by a jury and found guilty of all three counts. This appeal followed.

The evidence presented at trial established the following events underlying the convictions.

The DEA conducted a reverse sting operation in which a confidential informant ("CI") and the agents posed as sellers of cocaine in order to offer drugs to Swarn, Goodley, and Brown. Some time in late 2004, the CI contacted Goodley and indicated that he could obtain large quantities of cocaine. Goodley, who was dealing cocaine supplied by Brown, contacted Brown to see if Brown was interested in purchasing a large quantity of cocaine. Brown, in turn, contacted his supplier, Swarn, who was the only person he knew who was capable of distributing a large quantity of cocaine, and told Swarn that Goodley could supply six kilograms of cocaine at $12,500 per kilogram. Swarn indicated he could sell the kilos for $15,000 apiece, and in May 2005, on a recorded telephone call, the CI spoke with Goodley to arrange the sale of the six kilograms of cocaine.

On May 24, 2005, via a recorded telephone call, the CI arranged to meet with Goodley in Canton, Texas to complete the transaction. Brown testified that Swarn wanted to see the cocaine and know it was real before completing the sale. Brown drove Goodley and Swarn from Dallas to Canton, to the prearranged location. Once the CI arrived, Goodley got out of the back seat and discussed the deal with the informant for a few minutes, and then they both got back in the vehicle to further discuss the deal with Brown and Swarn. During the meeting, which was recorded in audio and video, Goodley asked for a sample

of cocaine to "cook"[1] to make sure it was good. Goodley, Swarn, and Brown were advised that the kilograms of cocaine weighed 35 ounces, to which Goodley replied that "we" did not come to jack the cocaine, but to do business. Goodley, Swarn, and Brown had not brought any money with them, and no sale was made. The three men returned to Dallas.

Later that day, Goodley spoke with the CI by phone about the deal falling through. During this call, a recording of which was played for the jury, Goodley reassured the CI that Swarn and Brown were his partners, and indicated that he and his partners were still interested in going through with the sale. However, Goodley did not make contact with the CI following that phone call.

A month later, the CI contacted Brown, and arranged for a larger load of cocaine to be brought directly to Dallas. Brown indicated that he could "handle" 15 kilograms of cocaine if it was delivered to Dallas where the source of the money was located. They agreed upon a price of $12,500 per kilogram for a total of $187,000, and agreed to meet on June 24, 2005.

Before the meeting, Special Agent Downing of the DEA obtained 15 kilograms of cocaine and placed the cocaine in a false compartment in the rear seat of a specially outfitted undercover van. Brown contacted the CI and provided directions to a specific location. The CI, along with Agent Downing, drove to that location in the CI's vehicle and picked up Brown and Swarn. All four then traveled to a separate location where the undercover van containing the cocaine was parked. Upon arrival at the van's location, Agent Downing showed Brown and Swarn the cocaine. Brown and Swarn discussed getting a hotel room to "cook" the powder cocaine and obtaining the money needed to pay for the cocaine. It was Agent Downing's understanding that Swarn and Brown were going to leave, get the money, and return to purchase the cocaine.

---

[1] "Cooking" is the process by which powder cocaine is converted to crack cocaine.

3

Brown testified that after leaving, he and Swarn drove to Swarn's money source house. The money source wanted the cocaine delivered to the house to do the deal. Brown then called the CI and asked that the cocaine be brought to a nearby McDonald's. Agent Downing and the CI went to the McDonald's, but for safety reasons did not bring the van containing the cocaine. Brown and Swarn arrived at the McDonald's, and Brown got into the vehicle with the CI and the agent. Brown directed Agent Downing to follow Swarn, and when Agent Downing refused, Swarn and Brown left the area.

On August 5, 2005, Agent Downing planned the arrests of Swarn and Brown. He contacted both Swarn and Brown arranged a meeting to "front" them some cocaine and sell them some marijuana. Both arrived at the meeting and were arrested.

Goodley was arrested on August 11, 2005. After arrest, Goodley told Agent Downing that he knew an individual in Dallas who used two houses to traffic cocaine. Goodley admitted that he had met with this "individual," Brown, and the CI on May 24, 2005 for the purposes of brokering a cocaine deal. Goodley also told Agent Downing that he expected to be paid $6,000 from the CI for brokering this deal.

## II.    DISCUSSION

Defendants present numerous points of error, none of which provide a basis for overturning the convictions or justifies resentencing.

First, both Defendants challenge their convictions on the basis that the evidence presented at trial was not sufficient to support a conviction for any of the three counts. Because each Defendant moved for a judgment of acquittal at the close of the Government's case, the standard of review in assessing their sufficiency challenge is whether a "reasonable trier of fact could have found that the evidence established guilt beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979); United States v. Uvalle-Patricio, 478 F.3d 699, 701 (5th

Cir. 2007). "[T]he evidence . . . must be considered in the light most favorable to the government, giving the government the benefit of all reasonable inferences and credibility choices." United States v. Inocencio, 40 F.3d 716, 724 (5th Cir. 1994).

A review of the record indicates that a reasonable trier of fact could have found that the evidence established beyond a reasonable doubt that both Goodley and Swarn conspired to possess with intent to distribute cocaine and that they used a telephone to facilitate this drug trafficking crime. See Jackson, 443 U.S. at 319; Uvalle-Patricio, 478 F.3d at 701. The evidence established that both Defendants were involved in numerous drug transactions; Defendants agreed to meet with the CI for the purpose of purchasing cocaine; Goodley communicated via telephone with the CI to arrange these meetings; Swarn was able to procure sufficient funds to purchase the drugs; both Defendants expected to profit from the transactions; Defendants showed up at an meeting whose sole purpose was the sale of drugs; that Goodley regarded Swarn and Brown as his partners; and that Defendants were knowledgeable about the drug trade. The testimony of co-defendant Brown and Agent Downing was sufficient to establish the Defendants' guilt beyond a reasonable doubt. See United States v. Solis, 299 F.3d 420, 445-46 (5th Cir. 2002); United States v. Rey, 641 F.2d 222, 224 n.6 (5th Cir. 1981).

Both Goodley and Swarn also argue that their convictions should be overturned because they were entrapped.[2] Neither of the Defendants raised this defense at trial, so we review this issue for plain error. United States v. Garza, 807 F.2d 394, 396-7 (5th Cir. 1986). The entrapment defense focuses on the intent or predisposition of the defendant to commit the crime, rather than on the

---

[2] Goodley also argues that his conviction violates due process because "outrageous government conduct" violated his rights to due process. See United States v. Russell 411 U.S. 423. However, even had he established such conduct, Goodley is unable to avail himself of this defense because he was "an active participant in the criminal activities which gave rise to his arrest." United States v. Miller, 799 F.2d 985, 988 (5th Cir. 1986).

conduct of the government's agents. United States v. Ogle, 328 F.3d 182, 185 (5th Cir. 2003). The Government produced sufficient evidence about the Defendants' involvement in drug transactions prior to the one in question to indicate a predisposition for committing narcotics crime. Far from being reluctant participants, the record indicates the Defendants were keen participants in the transaction and eager to see the deal consummated. United States v. Ogle, 328 F.3d 182, 185 (5th Cir. 2003). The Defendants have not presented any evidence which would lead us to conclude that any error by the trial court in failing to raise the entrapment defense sua sponte was so "substantial" or "obvious" as to constitute plain error.

Additionally, Swarn asserts that the district court erred in admitting into evidence his prior felony convictions for possession of cocaine. District court decisions to admit evidence of prior convictions under Federal Rule of Evidence 404(b) in a criminal case are reviewed under a heightened abuse of discretion standard. United States v. Mitchell, 484 F.3d 762, 774 (5th Cir. 2007). Under Rule 404(b), prior convictions introduced to prove knowledge or intent are admissible as long as the probative value of the prior convictions exceeds their prejudicial effect. United States v. Harris, 932 F.2d 1529 (5th Cir. 1991). Because Swarn put intent at issue by pleading not guilty and there was not otherwise overwhelming evidence of intent, the probative value of the prior convictions is significant. Given this, and the district court's use of limiting instructions, the admittance of the prior convictions was not in error. See Mitchell, 484 F.3d at 774.

Goodley contends that the trial court erred in permitting Agent Downing to testify as to statements of the CI contained on the recordings of conversations between the CI and the Defendants. He argues that because the CI was not called to testify, the agent's testimony violated his Sixth Amendment right to confrontation under Crawford v. Washington, 451 U.S. 36 (2004). This argument

6

is without merit. Agent Downing testified as to the CI's statements only once; that testimony was objected to on the grounds of hearsay and the objection was sustained. To the extent that Goodley argues that the admission of the recordings themselves violated his Sixth Amendment rights, this objection was not raised below and as such is reviewed only for plain error. Reviewing the record under this standard, we do not find that the admission of the recordings violated Goodley's rights under the Sixth Amendment.

Finally, Swarn argues that the Government engaged in sentencing factor manipulation, purposely offering him an amount of cocaine that the Government knew would place him at an extremely high base offense level under the Sentencing Guidelines. Sentencing factor manipulation "occurs when a defendant, although predisposed to commit a minor or lesser offense, is entrapped in committing a greater offense subject to greater punishment." United States v. Spencer, 234 Fed. Appx. 233 (5th Cir. 2007) (citing United States v. Washington, 44 F.3d 1271, 1280 n.29 (5th Cir. 1995)). This Court has yet to determine whether sentencing entrapment is a cognizable defense. United States v. Snow, 309 F.3d 294, 295 (2002). However, even if it were considered here, Swarn has failed to show that the Government persuaded him to commit a greater criminal offense than he was predisposed to commit or that the Government's conduct was outrageous. Id. Swarn's participation in the drug transaction constituted conduct properly considered in determining their sentences, and his challenge to the base offense level fails. Id.; Spencer, 234 Fed. Appx. 233.

## III.    CONCLUSION

For the foregoing reasons, we AFFIRM the Defendants' convictions and AFFIRM the sentences imposed by the district court.