**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 10-4476
_____

GEORGE M. MANOLOVICH, III,

                                                      Appellant

v.

BETHEL PARK AND ERIC M. ANIBALDI
_____

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. No. 08-cv-01746)
District Judge:  Hon. Terrence F. McVerry

Submitted Pursuant to Third Circuit LAR 34.1(a)
February 6, 2012

Before:  SLOVITER, VANASKIE, and GARTH, Circuit Judges.

(Filed: February 10, 2012)
_____

OPINION
_____

GARTH, Circuit Judge.

       Appellant George Manolovich, III appeals from the District Court's order granting

summary judgment in favor of the defendants, Bethel Park and Eric M. Anibaldi on

Manolovich's claims pursuant to 42 U.S.C. § 1983.  At all times relevant to this appeal,

Anibaldi has been an employee of the Bethel Park Police Department.  On appeal,

Manolovich claims that a genuine issue of material fact existed as to whether Manolovich

1

could establish his claims under 42 U.S.C. § 1983 and Pennsylvania state law. For the reasons that follow, we will affirm the District Court's grant of summary judgment to Bethel Park and Eric M. Anibaldi.

I.

We write principally for the benefit of the parties and recite only the facts essential to our disposition.

In December 2006, Manolovich, who is divorced, began a relationship with Janet Martin, who is bound to a wheelchair. Martin's sisters became concerned when Martin chose to move in with Manolovich, and her sister Nancy Nix asked Manolovich to provide certain pieces of personal information, including his date of birth, social security number, and information about his divorce. With this information, Nix approached Anibaldi and asked whether he would run a background check on Manolovich. Anibaldi evidently declined to do so and suggested that Nix hire a private investigator. Thereafter, Nix contacted Michael Haberman, a private investigator, provided him with Manolovich's identifying information, and asked him to gather whatever information he could on Manolovich.

Haberman contacted Nix with information about Manolovich, including information about lawsuits against him, prior arrests, and a protective order filed against him by his ex-wife. According to Haberman and Nix, Haberman did not provide any documentation to Nix along with that information. On the basis of this information, Martin's sisters conducted their own independent investigation of Manolovich, and on the basis of all of the information they had acquired, they chose to confront Martin about her

2

relationship with Manolovich. That confrontation took place on December 27, 2006, in the apartment Manolovich and Martin shared while Manolovich was present.

According to Manolovich, during the course of their conversation, Martin's sisters had several papers, from which they read details of his divorce, details of the protective order against him, details of at least one civil suit in which he was involved, and, according to Manolovich, details of a March 2005 incident which had resulted in an involuntary commitment proceeding.[1] Anibaldi was not involved in the March 2005 incident. According to Manolovich, one of Martin's sisters told him that Anibaldi had provided them with the papers. One of Martin's sisters also told Martin that Nix had received the information about Manolovich from Anibaldi.[2]

Details of the March 2005 incident were contained in a Police Incident Report to which Anibaldi had access. Any such access is logged by software, and those logs can be reviewed by the Chief of Police. Pursuant to a discovery request, Bethel's Chief of Police examined the logs and determined that on December 1, 2005 Anibaldi had accessed the Police Incident Report pertaining to the March 2005 incident. The search indicated that Anibaldi did not print the report and that he had not accessed it again. The Chief of Police also determined that Manolovich's record in Pennsylvania's central

---

[1] Manolovich has been involved in three involuntary commitment proceedings: one related to the incident which led to the protective order against him, one related to an incident of which Martin's sisters learned about during their independent investigation, and a third related to the March 2005 incident. According to the deposition testimony of Martin's sisters, they never mentioned anything related to the March 2005 incident to Martin, but did discuss at least one of the other two incidents.

[2] In her deposition, Martin's sister testified that she made this statement based on Nix telling her that Anibaldi was the source of her information.

database was not accessed at any time after December 30, 2005. The Computer Administrator of the Bethel Police Department testified during his deposition that no member of the Bethel Police Department, including Anibaldi, had accessed any of Manolovich's records during December 2006.

Manolovich filed a 42 U.S.C. § 1983 action, with pendent state law claims, against Bethel Park, the Bethel Park Police Department, and various officials of both the municipality and the Police Department, including Anibaldi. The basis of Manolovich's complaint was an allegation that Anibaldi had accessed the Police Incident Report pertaining to the March 2005 incident and disseminated it to Martin's sisters. The defendants filed a motion to dismiss, which the District Court granted in part and denied in part, denying the motion with regard to Manolovich's Fourth Amendment unreasonable search and seizure claim as well as pendent state claims of reckless misconduct, negligence, and gross negligence against Anibaldi and with regard to Manolovich's claim against Bethel Park for failure to properly train its employees. After discovery, Anibaldi and Bethel Park filed a motion for summary judgment. On October 28, 2010, the District Court granted that motion on Manolovich's federal claims. The District Court declined to exercise supplemental jurisdiction over the remaining state claims, and dismissed them without prejudice. Manolovich timely appealed.

II.

We have jurisdiction pursuant to 28 U.S.C. § 1291. "We exercise plenary review over a district court's summary judgment ruling." Melrose, Inc. v. City of Pittsburgh, 613 F.3d 380, 387 (3d Cir. 2010). "[W]e apply the same standard as the District Court:

4

Summary judgment is appropriate only where, drawing all reasonable inferences in favor of the nonmoving party, 'there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'" Lexington Ins.Co. v. Western Pennsylvania Hosp., 423 F.3d 318, 322 n.2 (3d Cir. 2005) (quoting Fed.R.Civ.P. 56(c)).

III.

On appeal, Manolovich now claims that the District Court erroneously granted the defendants' motion for summary judgment because a genuine issue of material fact existed as to whether the defendants conducted an illegal search and seizure in violation of Manolovich's rights under the United State Constitution.

To make out a *prima facie* case under 42 U.S.C. § 1983, a plaintiff must demonstrate that a person acting under color of state law deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States. Nicini v. Morra, 212 F.3d 798, 806 (3d Cir. 2000). As previously stated, Anibaldi was employed by the Bethel Park Police Department at all times relevant to this appeal; the only matter in dispute is therefore whether he deprived Manolovich of a right, privilege, or immunity secured by the Constitution or laws of the United States. Manolovich specifically contends that by accessing the Police Incident Report pertaining to the March 2005 incident and disseminating it to Martin's sisters, Anibaldi undertook an unreasonable search and seizure in violation of the Fourth Amendment.

Manolovich has provided no affirmative evidence that Anibaldi improperly accessed and disseminated the Police Incident Report in question. There is deposition testimony indicating that during the confrontation between Martin and her sisters,

5

statements may have been made indicating that Anibaldi provided information to Martin's sisters. This uncorroborated testimony is the only evidence offered by Manolovich that even suggests Anibaldi provided *any* information to Martin's sisters. Even assuming that the testimony about the statements was true, and that the statements themselves were accurate, this fails to establish that Manolovich ever provided Martin's sisters with the Police Incident Report related to the March 2005 incident.

The database records and testimony of the Bethel Police Department Computer Administrator regarding those records clearly establish that neither Anibaldi nor any other member of the Bethel Police Department accessed the Police Incident Report in question at any time relevant to this appeal. In an effort to rebut these records, Manolovich offered a letter from Alex Alvater, who Manolovich claims to be an expert witness. In that letter, Alvater states that systems like those in use by the Bethel Police Department can be tampered with so as to conceal records of access.

Alvater's letter fails to meet any of the requirements for an expert disclosure under F.R.C.P. 26(a)(2)(b). To wit, the letter does not contain: 1) a complete statement of Alvater's opinion or of the basis for that opinion; 2) the data or information he considered in reaching his opinion; 3) any exhibits supporting or explaining the opinion; 4) Alvater's qualifications; 5) Alvater's prior certifications as an expert witness; or 6) any statement regarding compensation for Alvater's involvement in the case. In short, Manolovich's opposition to the records indicating that Anibaldi did not access the Police Incident

6

Report amounts to a vague implication of computer hacking unsupported by expert opinion.[3]

Furthermore, the only evidence to suggest that the contents of the specific Police Incident Report in question were ever discussed during the confrontation comes from Manolovich's testimony. That testimony is directly contradicted by the testimony of Martin's sisters regarding the content of their discussion with Martin. As the District Court found, "there is a significant gap between the information that Manolovich testified that the Sisters relayed to [Martin] and the information contained in the actual March 2005 Police Incident Report. The 'facts' that Manolovich testified to are not contained with the Police Incident Report." "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for the purposes of ruling on a motion for summary judgment." Scott v. Harris, 550 U.S. 372, 380 (2007).

We therefore conclude that no genuine issue of material fact exists as to whether Anibaldi did in fact access and disseminate the report in question. He did not. That alleged access and dissemination formed the entire factual basis for Manolovich's

---

[3] Manolovich also argues that the District Court improperly relied on the reports produced concerning access to computerized information, claiming that because the reports were generated for the purpose of this lawsuit, they do not fall within the business records exception of F.R.E. 803(6) and are therefore inadmissible hearsay. As several other Circuits have held, the business records exception applies to the data contained in a given document or printout, not to the printout itself. See, e.g., United States v. Fujii, 301 F.3d 535, 539 (7th Cir.2002); United States v. Sanders, 749 F.2d 195, 198 (5th Cir. 1984). There is no question that the data contained in the access reports is regularly maintained, and we are therefore persuaded that the reports are admissible under the business records exception.

complaint, and in the absence of any genuine issue of material fact as to whether Anibaldi improperly accessed and disseminated the Police Incident Report, the District Court properly determined that the defendants were entitled to judgment as a matter of law. We also conclude that since Anibaldi was entitled to judgment as a matter of law on Manolovich's federal claims, Bethel Park was entitled to judgment as a matter of law. See City of Los Angeles v. Heller, 475 U.S. 796, 799 (1986) (municipal liability under 42 U.S.C. § 1983 depends upon an underlying constitutional violation committed by an individual agent of the municipality).

IV.

Because we conclude that Manolovich's allegations do not raise any genuine issue of material fact, we will affirm the District Court's October 28, 2010 order granting summary judgment in favor of the defendants and dismissing without prejudice his remaining pendent state law claims against Anibaldi.