**FOR PUBLICATION**

In the

United States Court of Appeals

For the Eleventh Circuit

————————————

No. 23-10463

————————————

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*versus*

STEVEN MICHAEL MARKS,

*Defendant-Appellant.*

————————————

Appeal from the United States District Court
for the Middle District of Florida
D.C. Docket No. 6:17-cr-00257-PGB-LHP-1

————————————

Before JORDAN, LAGOA, and TJOFLAT, Circuit Judges.

JORDAN, Circuit Judge:

Stephen Michael Marks pled guilty to one count of entice-ment of a minor to engage in sexually explicit conduct for the pur-pose of producing a visual depiction of such conduct, in violation of 18 U.S.C. § 2251(a). Prior to the entry of the guilty plea, the

district court—following hearings before a magistrate judge—twice found Mr. Marks competent and ultimately accepted his guilty plea.

Mr. Marks now appeals his conviction. He argues that the magistrate judge and the district court erred in placing on him the burden to prove that he was incompetent. He also contends that the evidence showed that he was not competent.

We affirm. First, placing the burden on Mr. Marks did not matter because the evidence on the issue of competency was not in equipoise. Second, the district court did not clearly err in finding that Mr. Marks was competent.

## I

In 2017, a grand jury indicted Mr. Marks on three counts of enticement of minors to engage in sexually explicit conduct for the purpose of producing a visual depiction of such conduct, in violation of 18 U.S.C. § 2251(a), (e); one count of receipt of child pornography, in violation of 18 U.S.C. § 2252A(a)(2), (b)(1); and one count of possession of child pornography, in violation of 18 U.S.C. § 2252A(a)(5)(B), (b)(2). The charges stemmed from Mr. Marks targeting young children in online chat rooms for approximately five months.

## A

Following the indictment, Mr. Marks and the government jointly filed a motion for a psychiatric/psychological examination. They asserted that Mr. Marks' "developmental history [and] the

severity of his autism defects" evidenced the need for the district court to undertake a competency determination. *See* D.E. 73 at 1.

A magistrate judge conducted a two-day competency hearing in April of 2019 pursuant to 18 U.S.C. § 4241. The judge heard testimony from three expert witnesses—Dr. Randy Otto, a court-appointed forensic psychologist who interviewed Mr. Marks for about four hours; Dr. Lynda Geller, a psychologist engaged by the defense who evaluated Mr. Marks for autism spectrum disorder; and Dr. Jeffrey Danziger, a forensic psychiatrist who reviewed reports from other doctors and issued his own report following an interview with Mr. Marks. All of the experts agreed that Mr. Marks was autistic. Dr. Otto opined that Mr. Marks was competent, while Dr. Geller and Dr. Danziger opined that he was incompetent. Both parties then submitted memoranda presenting their arguments and challenging the other side's expert witnesses.

The magistrate judge recommended that the district court find Mr. Marks incompetent to stand trial. Although neither side addressed who bore the burden on the issue of competency, and both sides had jointly requested the hearing, the judge placed the burden of proving incompetency on Mr. Marks. The judge reasoned that, because Mr. Marks raised the question of his competency and consistently argued that he was not competent to proceed, he bore the burden.

In his evaluation of the medical evidence, the magistrate judge acknowledged that Mr. Marks had autism. Giving greater weight to the opinions of Dr. Otto and Dr. Danziger—who were

experts in forensic psychology and psychiatry—over the opinion of Dr. Geller, the judge found that Mr. Marks had difficulty understanding the nature of legal proceedings in general, the facts of his own case, who his attorneys were and how they could help him, the charges he faced, the difference between probation and a plea agreement, and why he had previously appeared in court. The judge also reviewed additional evidence, including a recording and transcript of Mr. Marks' interview with Dr. Otto, chat transcripts between Mr. Marks and the alleged victims, a recording and transcript of Mr. Marks' interview with the police, and reports by other medical professionals that the expert witnesses had relied upon to render their opinions. Ultimately, the judge concluded that Mr. Marks did not possess a rational and factual understanding of the proceedings against him or the capacity to engage in the reasoning necessary to decide whether or not to plead guilty, and recommended that the district court find him incompetent.

The government objected to the magistrate judge's report and recommendation, and asserted that Mr. Marks had the burden to establish that he was incompetent. Mr. Marks also objected to the report and recommendation, but only on the ground that he believed he should be committed to the custody of the Attorney General due to his incompetency.

The district court sustained the government's objections and found Mr. Marks competent to stand trial. The court agreed with the magistrate judge that the parties did not contest that the burden of proof rested with Mr. Marks to prove he was

incompetent.  The court found, however, that Mr. Marks demonstrated a lay person's understanding of the legal system.  He could, moreover, make an informed decision about proceeding to trial, could consult with his attorneys and review documents and evidence in the case, and could ultimately decide whether to plead guilty.

**B**

Following the district court's ruling, Mr. Marks signed a plea agreement in which he agreed to plead guilty to one count of enticing a minor to engage in sexually explicit conduct for the purpose of producing a visual depiction of such conduct, in violation of 18 U.S.C. § 2251(a), as charged in a superseding information filed in April of 2021.  A few weeks later, however—and before entry of a guilty plea—Mr. Marks moved for another competency hearing.  His attorneys represented to the district court that, after meeting with him, they believed his responses to their questions showed that he was in fact incompetent to proceed.  The government did not oppose the motion, and requested that a psychiatric examination be conducted before the change of plea hearing.

Prior to the second competency hearing, the government argued that its evidence continued to show that Mr. Marks was competent.  Dr. Ashley Jenkins, a forensic psychologist with the Bureau of Prisons, had issued a report following an extensive evaluation and found that Mr. Marks had a rational and factual understanding of the proceedings against him and could assist his

attorneys with his defense.  The government asserted that Dr. Jenkins' report demonstrated that Mr. Marks was competent.

Mr. Marks responded that he was still incompetent.  He maintained, for example, that he still lacked decisional competence.

In December of 2021, the magistrate judge held a second competency hearing over the course of three days.  The judge heard testimony from Dr. Jenkins; Gretchen Bennett, a licensed speech language pathologist; Dr. Rosa Negrón-Muñoz, a forensic psychiatrist; and Dr. Angela Baird-Hepworth, the clinical executive director of a residential program in which Mr. Marks had participated.  Dr. Jenkins maintained her opinion that Mr. Marks was competent.  Ms. Bennett and Dr. Negrón-Muñoz, who testified as expert witnesses, opined that Mr. Marks was incompetent.  Dr. Baird-Hepworth, who testified as a lay witness, discussed her observations of Mr. Marks' abilities while living in the residential program.

After the hearing, Mr. Marks filed a memorandum addressing the burden of proof issue.  He argued that 18 U.S.C. § 4241, the federal competency statute, was silent as to which party bears the burden of proof and that, under earlier Eleventh Circuit precedent, the burden was on the government.

The magistrate judge issued his second report and recommendation in 2022, this time recommending that the district court find Mr. Marks competent.  The judge agreed with the government that the applicable standard was lower than decisional

competency.  The judge also noted that he had previously placed the burden of proof on Mr. Marks, a burden which he did not challenge at the time.  Reviewing the new burden-of-proof argument made by Mr. Marks, the judge explained that he failed to present legal authority to support his contention, and ruled that the burden of proof remained on him to prove by a preponderance of the evidence that he was incompetent.  Weighing the evidence and crediting Dr. Jenkins, the government's expert witness, over the defense experts, the judge found that Mr. Marks did not carry his burden of proof, and recommended that the district court find him competent.

Overruling Mr. Marks' objections, the district court adopted the magistrate judge's second report and recommendation and found that Mr. Marks was competent.  The court rejected Mr. Marks' argument that the burden of proof was on the government. The court also agreed with the magistrate judge on the applicable competency standard, and found that his credibility determinations were fair.

In October of 2022, following a change-of-plea hearing before the magistrate judge, the district court accepted Mr. Marks' guilty plea to the charge of violating § 2251(a).  The court sentenced him to 156 months of imprisonment, to be followed by 10 years of supervised release.

## II

Mr. Marks appeals the competency determination of the district court.  He argues that the court erred by placing the burden of

proof on him because (a) the competency statute, 18 U.S.C. § 4241, is silent as to which party bears the burden; and (b) binding Eleventh Circuit precedent under the predecessor statute places the burden on the government. He also contends that the constitutional competency standard requires a showing of decisional competency and that the district court clearly erred in ultimately finding him competent.

Our review of legal issues, including constitutional questions and the interpretation of a criminal statute like § 4241, is plenary. *See United States v. Butler*, 117 F.4th 1309, 1316 (11th Cir. 2024); *United States v. Shamsid-Deen*, 61 F.4th 935, 944 (11th Cir. 2023). The district court's competency determination, however, is a finding of fact that we review for clear error. *See United States v. Saingerard*, 621 F.3d 1341, 1343 (11th Cir. 2010).

## III

A mentally incompetent defendant "may not be subjected to a trial." *Drope v. Missouri*, 420 U.S. 162, 171 (1975). As we have explained, the trial or guilty plea conviction of a person who is mentally incompetent is prohibited by the Due Process Clause of the Fifth and Fourteenth Amendments. *See United States v. Rodriguez*, 751 F.3d 1244, 1252 (11th Cir. 2014); *Sheley v. Singletary*, 955 F.2d 1434, 1437 (11th Cir. 1992).

## A

The constitutional test for competency, as articulated by the Supreme Court, is "whether [the defendant] has sufficient present ability to consult with his lawyer with a reasonable degree of

rational understanding—and whether he has a rational as well as factual understanding of the proceeding against him." *Dusky v. United States*, 362 U.S. 402, 402 (1960). *Accord Drope v. Missouri*, 420 U.S. 162, 171 (1975) ("[A] person whose mental condition is such that he lacks the capacity to understand the nature and object of the proceeding against him, to consult with counsel, and to assist in preparing his defense may not be subjected to a trial."). Similarly, 18 U.S.C. § 4241(d) provides that a defendant is incompetent if a preponderance of the evidence shows that a mental disease or defect makes him "unable to understand the nature and consequences of the proceeding against him or to assist properly in his defense."

Mr. Marks argues, as he did below, that the *Dusky* standard for incompetency encompasses "decisional competency" such that the defendant must be able to "rationally and competently make trial decisions." Appellant's Br. at 23. *See generally* Rashmi Goel, *Not Demented Enough: Dementia and Competency to Stand Trial*, 25 Nev. L. J. 203, 227 (2025) ("Decisional competency involves the defendant's capacity to make important decisions, such as whether to accept a plea deal, to testify, or to plead guilty."). Based on binding precedent, we reject Mr. Marks' formulation of the constitutional competency standard.

In *Godinez v. Moran*, 509 U.S. 389, 399 (1993), the Supreme Court adhered to the *Dusky* standard and held that the competency required to plead guilty or waive counsel is the same as that required to stand trial. In reaching that conclusion, the Court

discussed the Ninth Circuit's competency standard for defendants who are pleading guilty—that the defendant have "the capacity for 'reasoned choice' among the alternatives available to him." *Id.* at 394. The Court remarked that "[h]ow th[at] standard is different from (much less higher than) the *Dusky* standard—whether the defendant has a "rational understanding" of the proceeding—is not readily apparent to us." *Id.* at 397.

After *Godinez*, the Court again reiterated that *Dusky* and *Drope* set out the constitutional standard for competency. *See Indiana v. Edwards*, 554 U.S. 164, 174 (2008) ("[T]he Court's 'mental competency cases set forth a standard that focuses directly upon a defendant's 'present ability to consult with his lawyer,' a 'capacity . . . to consult with counsel,' and an ability 'to assist [counsel] in preparing his defense[.]'") (quoting *Dusky* and *Drope*). And we have explained that "the test for competency is not whether [the defendant] always acted in his own best interests; rather it is whether he had sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding." *Raheem v. GDCP Warden*, 995 F.3d 895, 931 (11th Cir. 2021) (describing the competency inquiry as "narrow") (internal quotation marks and citation omitted).

Based on these authorities, the district court correctly applied the *Dusky* test as it has long been understood. *See generally* 2 David S. Rudstein et al., Criminal Constitutional Law § 11.03[2] (2023) ("[A]n accused must have the capacity to assist in preparing his or her defense. This does not mean, however, that the accused

23-10463            Opinion of the Court                11

must fully comprehend the intricacies of the legal questions and theories involved in the case, or that he or she be able to suggest a particular trial strategy, or choose among alternative trial defenses.") (footnotes omitted). We reject Mr. Marks' contrary argument.[1]

## B

The next question, as framed by Mr. Marks, is which party bears the burden of proof with respect to competency under 18 U.S.C. § 4241. For reasons we will explain, we need not provide a definitive answer today.

### 1

The federal competency statute states in relevant part as follows:

> At any time after the commencement of a prosecution for an offense and prior to the sentencing of the defendant . . . the defendant or the attorney for the

---

[1] We recognize that, in a different scenario, the Supreme Court has articulated a competency standard that approximates decisional competency. *See Rees v. Payton*, 384 U.S. 312, 314 (1966) (remanding for the district court to determine whether the petitioner in a capital habeas corpus case was competent to withdraw his certiorari petition, and framing the issue as "whether he has capacity to appreciate his position and make a rational choice with respect to continuing or abandoning further litigation or on the other hand whether he is suffering from a mental disease, disorder, or defect which may substantially affect his capacity in the premises"). Mr. Marks' case, however, is governed by *Dusky* and *Drope* rather than by *Rees*. *See Ford v. Haley*, 195 F.3d 603, 617 (11th Cir. 1999) (explaining that *Rees* "established the test for determining competency to waive post-conviction review in a capital case").

> Government may file a motion for a hearing to deter-
> mine the mental competency of the defendant. The
> court shall grant the motion, or shall order such a
> hearing on its own motion, if there is reasonable
> cause to believe that the defendant may presently be
> suffering from a mental disease or defect rendering
> him mentally incompetent to the extent that he is un-
> able to understand the nature and consequences of
> the proceeding against him or to assist properly in his
> defense.

§ 4241(a). The statute is silent on the burden of proof, but one sub-
section provides that the standard of proof is preponderance of the
evidence:

> If, after the hearing, the court finds by a preponder-
> ance of the evidence that the defendant is presently
> suffering from a mental disease or defect rendering
> him mentally incompetent to the extent that he is un-
> able to understand the nature and consequences of
> the proceeding against him or to assist properly in his
> defense, the court shall commit the defendant to the
> custody of the Attorney General.

§ 4241(d).

Mr. Marks contends that our circuit precedent, particularly
*United States v. Makris*, 535 F.2d 899 (5th Cir. 1976), places the bur-
den of proof as to competency on the government. *See* Appellant's
Br. at 14–16. The government, relying on the preponderance-of-
the-evidence language in § 4241(d) and our decision in *United States*

*v. Izquierdo*, 448 F.3d 1269, 1276–77 (11th Cir. 2006), responds that the burden is on the defendant to prove that he is incompetent.

In *Makris*, which involved a federal prosecution for perjury, we interpreted and applied the former competency statute, 18 U.S.C. § 4244. Although that statute was (like § 4241(a) today) silent on the burden of proof, we held that "[t]here can be no question that in federal criminal cases the government has the burden of proving the defendant competent to stand trial at the [§] 4244 hearing or its nunc pro tunc substitute." 535 F.2d at 906. We also rejected a beyond-a-reasonable-doubt standard of proof, and opted for preponderance of the evidence. *See id.*

Much like § 4241(a) today, at the time of *Makris* the former § 4244 was silent on the burden of proof:

> Whenever after arrest and prior to the imposition of sentence or prior to the expiration of any period of probation the United States Attorney has reasonable cause to believe that a person charged with an offense against the United States may be presently insane or otherwise so mentally incompetent as to be unable to understand the proceeding against him or properly to assist in his own defense, he shall file a motion for a judicial determination of such mental competency of the accused, setting forth the ground for such belief with the trial court in which proceeding are pending.

63 Stat. 686 (1949) (amended 1984). *See also United States v. Edwards*, 488 F.2d 1154, 1159 n.3 (5th Cir. 1974) (quoting the former § 4244).

14                    Opinion of the Court                    23-10463

In 1984, Congress amended the competency statute through the Insanity Defense Reform Act and recodified it as 18 U.S.C. § 4241. As noted, the current version of § 4241 allows either party to move for a competency determination once prosecution has commenced and specifies that the standard of proof is preponderance of the evidence. *See* § 4241(a), (d).

In *Medina v. California*, 505 U.S. 437, 452 (1992), the Supreme Court held that a California statute which established a presumption of competency, and placed the burden of proving incompetency on the defendant by a preponderance of the evidence, did not violate due process. In the course of its opinion, the Court stated that "there is no settled tradition on the proper allocation of the burden of proof in a proceeding to determine competence," and noted that "there remains no settled view of where the burden of proof should lie." *Id.* at 446–47.[2]

Four years later, in *Cooper v. Oklahoma*, 517 U.S. 348, 355–56 (1996), the Supreme Court struck down on due process grounds an Oklahoma law which required a defendant to prove incompetency

---

[2] In a 1995 habeas corpus case where the petitioner challenged the state court's competency determination, we stated that "a petitioner raising a substantive claim of incompetency is entitled to no presumption of incompetency and must demonstrate his or her incompetency by a preponderance of the evidence." *Medina v. Singletary*, 59 F.3d 1095, 1106 (11th Cir. 1995). *Medina* relied on and quoted *James v. Singletary*, 957 F.2d 1562, 1571 (11th Cir. 1992), for this proposition, but *James*—another habeas corpus case—did not cite any authority for its one-sentence characterization of the burden of proof. In any event, *Medina* and *James* do not solve the burden of proof issue here because they did not address § 4241.

by clear and convincing evidence.  The Court said in dicta that, in enacting § 4241, "Congress has directed that the accused in a federal prosecution must prove incompetence by a preponderance of the evidence."  *Id.* at 362.

In *Izquierdo*, a 2006 decision, we discussed § 4241(a) and said that it "*arguably* contemplates that the burden will lie with the party making a motion to determine competency."  448 F.3d at 1276–77 (emphasis added).  We also noted that "the Supreme Court has stated, albeit in *dicta*, that the burden of establishing incompetence rests with the defendant."  *Id.* at 1277 (citing *Cooper*, 517 U.S. at 362).

The defendant in *Izquierdo* had filed a motion to withdraw his guilty plea on the basis of incompetency.  We concluded that *Makris* "[was] not on point because it involved the *government's* pretrial motion to determine the competency of the defendant, and did not involve a *defendant's* motion to withdraw a guilty plea based on incompetency."  *Id.* at 1277 (emphasis in original).  We also explained that, "[m]ore importantly," the former § 4244—the statute at issue in *Makris*—"was a different statute with different language" than § 4241 because it "placed more emphasis on the government's role in filing an incompetency motion."  *Id.* at 1277–78.  We held that, under the "particular circumstances of the case," the "district court did not err in placing the burden of proof on [the defendant] as to his own motion to withdraw his guilty plea based on incompetency."  *Id.*  Given that the competency determination was made following the defendant's motion to withdraw his guilty plea, we

said that we "need not resolve where the burden of proof lies in situations other than the narrow one before [us]." *Id.* at 1278.

We next returned to the burden of proof issue in *United States v. Bradley*, 644 F.3d 1213, 1267–69 (11th Cir. 2011). In that case, the defendant—who had requested a competency hearing in the district court—challenged the finding that he was competent. Although the defendant did not raise a burden of proof issue, and only asserted a substantive incompetency claim, we cited *Izquierdo* and said in dicta that "[w]hile earlier precedent [such as *Makris*] tends to the contrary . . . we have since decided that a petitioner raising a substantive claim of incompetency is entitled to no presumption of incompetency and must demonstrate his or her incompetency by a preponderance of the evidence." *Id.* at 1268 (internal citation and quotation marks omitted). We then concluded, based on our review of the evidence, that the district court had not clearly erred in finding that the defendant was competent. *See id.* at 1269–70.

The circuits which have directly addressed the burden of proof under § 4241 are divided. The Fourth and Eighth Circuits have held that the defendant bears the burden of proving his incompetency. *See United States v. Robinson*, 404 F.3d 850, 856 (4th Cir. 2005); *United States v. Washington*, 968 F.3d 860, 864 (8th Cir. 2020). The Third, Fifth, and Ninth Circuits, on the other hand, place the burden of proving competency on the government. *See United States v. Velasquez*, 885 F.2d 1076, 1089 (3d Cir. 1989); *United States v. Pervis*, 937 F.3d 546, 554 (5th Cir. 2019); *United States v.*

*Hoskie*, 950 F.2d 1388, 1392 (9th Cir. 1991).  The Seventh Circuit seems to have conflicting decisions on the issue.  *Compare United States v. Morgano*, 39 F.3d 1358, 1373 (7th Cir. 1994) ("The starting point in all this is the notion that a criminal defendant is presumed to be competent to stand trial and bears the burden of proving otherwise."), *with United States v. Teague*, 956 F.2d 1427, 1431 n.10 (7th Cir. 1992) ("We note that once the issue of the defendant's mental competency is raised, the government bears the burden of proving that the defendant is competent to stand trial.").  The Second and Sixth Circuits have left open the question.  *See United States v. Nichols*, 56 F.3d 403, 410 (2d Cir. 1995); *United States v. Dubrule*, 822 F.3d 866, 876 n.3 (6th Cir. 2016).

**2**

We need not definitively decide whether, as a general matter, § 4241 places the burden of proof as to competency on the defendant in all cases, or on the government in all cases, or whether the burden of proof depends on which party requests the competency hearing.  The allocation of the burden of proof is a procedural rule which "affects the outcome only in a narrow class of cases where the evidence is in equipoise; that is, where the evidence that a defendant is competent is just as strong as the evidence that he is incompetent." *Cooper*, 517 U.S. at 355 (internal citation and quotation marks omitted).  *See also Goldman Sachs Grp., Inc. v. Ark. Tchr. Ret. Sys.*, 594 U.S. 113, 127 (2021) (noting that the burden of proof "will have bite only when the court finds the evidence in equipoise—a situation that should rarely arise"); *Schaffer ex rel. Schaffer v. West*, 546 U.S. 49, 58 (2005) ("In truth, however, very few cases

will be in evidentiary equipoise."). As we explain below, the evidence here was not in equipoise, and the district court did not clearly err in finding Mr. Marks competent.

Both the magistrate judge and district court reviewed the following testimony following the 2021 competency proceeding:

- Dr. Jenkins, a BOP forensic psychologist who served as a witness for the government, submitted a competency evaluation examining Mr. Marks prior to the hearing and testified to her opinion. Her report integrated information learned over six sessions that involved about ten hours of interviews with Mr. Marks; psychological testing; communications with others who had contact with Mr. Marks, such as his attorneys, his family, the police, and other expert witnesses; and review of discovery documents and other recordings. She reported that Mr. Marks understood the proceeding against him and could fully assist counsel, testify at trial, and make decisions regarding his case. She diagnosed him with autism spectrum disorder without accompanying intellectual impairment, suggested that he had "high-functioning autism," and noted that he had major depressive disorder in full remission. She also diagnosed Mr. Marks with "specific learning disorder with impairment in math and social anxiety disorder" but did not believe these diagnoses factored into his competency.

- In her testimony during the competency proceeding, Dr. Jenkins opined that she did not observe memory

impairments, an inability to make decisions or advocate for himself, any "severe deficits in executive functioning," a lack of understanding of the case and severity of the charges he faced, or a parroting of responses back to her based on her questioning. She placed his communication at the level of a young adult, rather than that of a young child. In her view, he was competent to stand trial or plead guilty, and could testify at trial with appropriate breaks in questioning.

- Ms. Bennett, a speech and language pathologist who served as a witness for Mr. Marks, testified to her evaluation of him. Her evaluation and testimony consisted of an interview of over four hours with Mr. Marks; insight provided by his father; and review of the police interview, communications with his legal counsel, discovery materials, and reports from other expert witnesses.

- According to Ms. Bennett, Mr. Marks struggled with understanding communications involving unfamiliar vocabulary terms and higher-level language, recognizing the behaviors of other people, and processing complex information. She also noted that the results of her linguistic tests showed that Mr. Marks had limited language abilities, around the range of a 9- to 14-year-old child's, but that he understood the straightforward questioning he faced during his police interview. She identified his language impairment as a receptive and expressive language disorder, which was consistent with his behavior parroting back his understanding of evaluative

questions and facts about his case, the charges he faced, and future consequences. She believed that Mr. Marks' impairments affected his ability to make decisions and understand advice from counsel, ultimately impacting his competence.

- Dr. Negrón-Muñoz, a forensic psychiatrist who served as a witness for Mr. Marks, testified to her diagnoses of autism with intellectual impairment and other language disorders. She conducted over three recorded clinical interviews with him and reviewed discovery materials and his interviews with counsel, the police, and other expert witnesses.

- For her evaluation, Dr. Negrón-Muñoz focused on Mr. Marks' competency at the time he signed the plea agreement, though she had previously met with him and integrated her thoughts from those interactions into her testimony because his historical condition was still relevant to her opinion. She opined that his autism, although not severe, compromised his ability to engage in daily living activities such that he would need daily support and she emphasized that he did not have decisional competency. She also concluded that Mr. Marks' social, coping, play, and leisure skills were that of a 3- to 9-year-old, and she interviewed him as if she were interviewing a 9-year-old child. She further discussed issues she perceived in Dr. Jenkins' methodology and testimony.

- Dr. Baird-Hepworth, a psychologist and the clinical executive director of a residential program in which Mr. Marks

had resided, served as a defense lay witness. She testified to her observations of him at the facility.

- While Mr. Marks was in-residence for over four years, Dr. Baird-Hepworth saw him during therapy sessions, and received staff reports on a regular basis about his behavior. She testified to his inability to conduct daily tasks without a routine or prompting from residential staff, make decisions for himself, comfortably interact with others in a group setting, and express his feelings.

In their evaluation of Mr. Marks' competency in 2021, the magistrate judge and the district court also considered the expert testimony and evidence previously presented in the 2019 competency proceeding. *See* D.E. 302 at 12 n.11.

- Dr. Otto, a forensic psychologist who was appointed by the court, served as an expert witness for the government. He based his testimony on an approximately four-hour interview and review of discovery materials, a police interview, and other expert reports. He opined that Mr. Marks was conversant and able to communicate, recalled his arrest and interactions with law enforcement in some detail, could understand his attorneys and the court, thought logically, could make legal decisions with his attorneys' advice and input, could assist his attorneys and testify at trial, and understood the charges he faced and that he could go to prison. These abilities weighed in favor of finding him competent.

- Based on his evaluation, Dr. Otto diagnosed Mr. Marks with autism with difficulty processing language but without accompanying intellectual impairments, as well as anxiety, and ultimately believed he was "functioning in some reasonable ways despite his autism." He did not believe Mr. Marks had post-traumatic stress disorder (PTSD), and concluded that, despite his autism, diminished understanding of the legal process, struggle at times with rational understanding given his language processing impairment, and ability to make long-term decisions, Mr. Marks was competent to stand trial.

- Dr. Geller, a psychologist specializing in developmental disabilities, served as a witness for Mr. Marks. She based her testimony on three interviews conducted over the course of five hours and her review of discovery materials and reports from other expert witnesses and psychological evaluators who met with him. She diagnosed Mr. Marks with autism and PTSD, characterized his interpersonal social skills as that of a 3-year-old, and believed he would have difficulty testifying on the stand because of how he processed information and needed it to be presented in a simple way that a child would understand.

- Dr. Geller opined that Mr. Marks had difficulty with his working memory, which he would need to use in deciding whether or not to accept a plea because it involves considering the future consequences of the decision. She concluded

that he parroted facts back in response to Dr. Otto's questions. In her view, his counsel would be making the guilty/not guilty decision for him because he would not be capable of deciding on a plea for himself. She also did not believe he was capable of assisting counsel as a witness. Ultimately, she opined that Mr. Marks was incompetent.

- Dr. Danziger, a forensic psychiatrist, served as a witness for Mr. Marks. He based his testimony on reports he received from other expert witnesses and evaluators, discovery materials, and discussions he had with people who met with him over 14 months. He also had a conversation with Mr. Marks for a few hours.

- Like Dr. Otto, Dr. Danziger concluded that Mr. Marks had autism spectrum disorder with language impairment. He did not believe, however, that Mr. Marks possessed a factual understanding of the charges against him or a rational understanding of the proceeding, or was able to assist his attorneys, or could appreciate the harm of his conduct. He concluded that Mr. Marks was not competent to stand trial.

Following Mr. Marks' second competency proceeding in 2021, both the magistrate judge and the district court found that Mr. Marks was competent to stand trial. The magistrate judge clarified that even though he previously found Mr. Marks incompetent to stand trial after the 2019 proceeding, "the *sine qua non* of the [second] competency proceeding [was Mr.] Marks' argument that the evidence presented in 2019 and conclusions derived therefrom

were purely speculative and forward thinking, and it is only now, after attempts to educate [him], that there is sufficient evidence to determine competency." D.E. 302 at 107 n.59.

Both the 2019 and 2021 proceedings involved voluminous lay and expert testimony as to Mr. Marks' competence—multiple forensic professionals, doctors, psychologists, and individuals with an understanding of Mr. Marks' autism testified. The government presented Dr. Jenkins and Dr. Otto as expert witnesses—a forensic psychologist and forensic psychiatrist, respectively—who reviewed extensive materials and conducted interviews with Mr. Marks. Mr. Marks presented Ms. Bennett, Dr. Negrón-Muñoz, Dr. Geller, and Dr. Danziger as his expert witnesses—a speech language pathologist, forensic psychiatrist, psychologist, and forensic psychiatrist, respectively—who also reviewed extensive materials and conducted interviews with Mr. Marks. He also presented Dr. Baird-Hepworth as a lay witness who testified to her observations of him in his residential facility.

A finding of fact is "clearly erroneous only when [we] are left with a definite and firm conviction that a mistake has been committed." *United States v. Hogan*, 986 F.2d 1364, 1372 (11th Cir. 1992) (quotation marks omitted). Our review is deferential, and a "finding that is 'plausible' in light of the full record—even if another is equally or more so—must govern." *Cooper v. Harris*, 581 U.S. 285, 293 (2017) (citation omitted).

As a general matter, we will not find that the district court clearly erred when, "[f]aced with diametrically opposite expert

testimony, . . . [it] simply credit[ed] one opinion over another where other record evidence exists to support the conclusion." *Bradley*, 644 F.3d at 1268 (quotation marks and brackets omitted). That is the situation presented here, and "when a trial [court's] finding is based on his decision to credit the testimony of one of two or more witnesses, each of whom has told a coherent and facially plausible story that is not contradicted by extrinsic evidence, that finding, if not internally inconsistent, can virtually never be clear error." *Anderson v. City of Bessemer City*, 470 U.S. 564, 575 (1985).

Although both sides presented multiple expert witnesses and additional evidence, that does not mean that the evidence was in equipoise, i.e., that it was equal. *See* The American Heritage Dictionary of the English Language 603 (4th ed. 2009). The district court never suggested that the evidence was perfectly balanced such that it could not choose which side's evidence to credit. Indeed, the magistrate judge, who found Mr. Marks incompetent after the 2019 proceeding, explained that the evidence in the 2021 proceeding "conclusively establishes that [Mr.] Marks is presently competent pursuant to *Dusky*." D.E. 302 at 107 n.59. *See Ionmar Compania Naviera, S.A. v. Olin Corp.*, 666 F.2d 897, 903–04 (5th Cir. 1982) (evidence as to the origin of a fire was "not in equipoise" once the district court drew a compelling inference by giving "full credence to the opinions of admitted qualified experts" and the testimony of other witnesses).

Mr. Marks essentially asks us to step into the shoes of the district court and reconsider its credibility and weight determinations as the expert and lay witnesses.  For example, Mr. Marks asks us to give less weight to the testimony of Dr. Jenkins because of things she did not do in reaching her conclusions.  But this reweighing is not something we are permitted to do under clear error review.  In any event, the district court determined that Mr. Marks' objection to the magistrate judge's reliance on Dr. Jenkins' opinion had "taken [her] testimony out of context and oversimplifie[d] her opinion regarding [his] mental competence."  D.E. 316 at 37.

Given the extensive record testimony considered by the district court, we believe that placing the burden of proof on Mr. Marks did not matter.  The evidence was not in equipoise, and the district court did not clearly err in finding that Mr. Marks was competent.  As a result, we need not decide which party bears the burden of proof under 18 U.S.C. § 4241.

## IV

Mr. Marks' conviction is affirmed.

**AFFIRMED.**

23-10463　　　　　　　TJOFLAT, J., Concurring　　　　　　　1

TJOFLAT, Circuit Judge, concurring:

I write separately because I believe the circuit split is misguided. The majority correctly decides that the evidence here is not in equipoise, therefore assigning the burden of proof is inapposite. However, I further contend that assigning the burden should never impact the outcome of a § 4241 competency hearing.

## A

First, some terminology. The phrase "burden of proof" is a conglomerate; it incorporates at least two related but fundamentally distinct concepts. Thayer was an early luminary:

> In legal discussion, this phrase, "the burden of proof," is used in several ways. It marks (1) the peculiar duty of him who has the risk of any given proposition on which parties are at issue—who will lose the case if he does not make this proposition out, when all has been said and done. . . . (2) . . . the duty of going forward in argument or in producing evidence; whether at the beginning of a case or at any layer moment throughout the trial or the discussion. (3) There is an undiscriminated use of the phrase, perhaps more common than either of the two, in which it may mean either or both of the others.

James Bradley Thayer, *A Preliminary Treatise on Evidence* 355 (1898).

In drafting its Model Code of Evidence, the American Law Institute split the term in half, dubbing the first notion "the burden of persuasion" and the second "the burden of producing evidence." § 5122 Policy Background; Burdens of Proof, Fed. Prac. & Proc.

Evid. § 5122 (2d ed.). When necessary to distinguish, courts continue to use these terms and often shorten the latter phrase to the "burden of production." *See*, *e.g.*, *United States v. Shamsid-Deen*, 61 F.4th 935, 949 (11th Cir. 2023) (explaining that the defendant had "the burden of persuasion, as well as the burden of production" for his affirmative defense).

The burden of persuasion is defined by Black's Law Dictionary as "[a] party's duty to convince the factfinder to view the facts in a way that favors that party." *Burden of Persuasion*, Black's Law Dictionary (12th ed. 2024). The burden of persuasion must be met by the applicable "standard of proof," which refers to the "degree or level of proof demanded in a specific case, such as 'beyond a reasonable doubt' or 'by a preponderance of the evidence.'" *Standard of Proof*, Black's Law Dictionary (12th ed. 2024). In other words, the standard of proof establishes the metaphysical evidentiary line that must be crossed for a judge or jury to establish a fact. And the burden of persuasion is borne by the party who must shepherd the factfinder across that line. As the majority identifies, § 4241 provides a standard of proof but is silent on who bears the burden. *See* 18 U.S.C. § 4241.

The burden of production is more straightforward. It can be understood as "[a] party's duty to introduce enough evidence on an issue to have the issue decided by the factfinder, rather than decided against the party in a peremptory ruling such as a summary judgment or a directed verdict." *Burden of Production*, Black's Law Dictionary (12th ed. 2024). In sum, there are two duties that can be

23-10463          TJOFLAT, J., Concurring          3

allocated: (1) the duty of persuasion, which obligates a party to convince the court that the evidence satisfies the applicable standard of proof; and (2) the duty of production, which obligates a party to proffer sufficient evidence for a factfinder to reach a determination.

**B**

Next, we consider when and why a particular allocation of these burdens may impact a judicial outcome. I suggest that there are three such cases. The first is where a party bearing the burden of production fails to present any evidence or presents insufficient evidence for a determination to be plausibly made in their favor. It answers the question: if nothing happens, who wins? Because the burden of production can shift, this may arise at varying points throughout a proceeding. *See, e.g., Texas Dep't of Cmty. Affs. v. Burdine*, 450 U.S. 248, 255, 101 S. Ct. 1089, 1094 (1981) (describing the shifting burden of production in Title VII employment discrimination cases).

The second is where the evidence is exactly on the cusp of meeting the standard of proof. If the standard of proof is a preponderance of the evidence,[1] this condition exists when evidence is at equipoise, or completely balanced. *See Goldman Sachs Grp., Inc. v. Arkansas Tchr. Ret. Sys.,* 594 U.S. 113, 127, 141 S. Ct. 1951, 1963

---

[1] Our Circuit, along with the Supreme Court, often equates the "preponderance of evidence" standard with the self-descriptive "more likely than not" standard. *See, e.g., Raijmann v. U.S. Atty. Gen.*, 313 F. App'x 236, 239 (11th Cir. 2009).

4                    TJOFLAT, J., Concurring                    23-10463

(2021) ("The defendant's burden of persuasion will have bite only when the court finds the evidence in equipoise . . . ."). At this precise state—uncommon as it may be—the burden of persuasion is typically dispositive, and the party who bears it will lose.

Lastly, there are certain cases where allocating the burden of persuasion alters the nature of what must be proved. Consider securities fraud actions brought under Securities and Exchange Commission Rule 10b-5(b). Plaintiffs alleging fraud traditionally had to prove that they relied on the misrepresentation at issue. *See Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 206, 96 S. Ct. 1375, 1387 (1976). But in 1988, the Supreme Court established a presumption of reliance, [2] rebuttable only if defendants "show that the misrepresentation in fact *did not* lead to a distortion of price." *Goldman Sachs Grp., Inc,* 594 U.S. at 125, 141 S. Ct. at 1962 (quoting *Basic Inc., v. Levinson*, 485 U.S. 224, 248, 108 S. Ct. 978, 993 (1988)) (emphasis added). It is not impossible to demonstrate the absence of something by a preponderance of the evidence, but "as a practical matter it is never easy to prove a negative." *Elkins v. United States*, 364 U.S. 206, 218, 80 S. Ct. 1437, 1444 (1960). Thus, sometimes assigning burdens may do more than decide close calls.

---

[2] The Court reasoned that investors rely on the integrity of prices in public markets and that most publicly available information (including public misrepresentations) is reflected in a security's market price. *Basic Inc. v. Levinson*, 485 U.S. 224, 247, 108 S. Ct. 978, 992 (1988).

23-10463                 TJOFLAT, J., Concurring                        5

## C

Returning to § 4241, I contend assigning burdens will not impact competency determinations. Regarding the need to gather sufficient evidence, which is normally achieved by assigning the burden of production, § 4241 places the ball in the district court. The psychiatric evaluation is ordered by the court, and pursuant to § 4247, the examiner is selected by the court. 18 U.S.C. § 4247(b). The examiner must then provide a report pursuant to statutory guidelines. 18 U.S.C. § 4247(c). While the parties may be permitted to supplement the court-ordered report, it is not necessary for the competency hearing to proceed.

The majority opinion leaves open the possibility that the burden of persuasion might matter if the psychological evidence is at equipoise. I disagree. As a threshold matter, balanced evidence is rare, and judges are well equipped to make close calls. In such extraordinary situations, § 4247 allows the court to order multiple evaluations to get a better picture. 18 U.S.C. § 4247(b). Moreover, if the judge truly cannot decide, a plain reading of the statute dictates the outcome. Section 4241(d) states that a court can only suspend proceedings (and hospitalize the defendant) if it finds *"by a preponderance of the evidence that the defendant* is presently suffering from a mental disease or defect rendering him *mentally incompetent . . . ."* 18 U.S.C. § 4241(d) (emphasis added). In other words, the court must find incompetence by a preponderance of the evidence. Anything short of that, including where the evidence is at equipoise, requires the defendant be adjudged competent.

6                    TJOFLAT, J., Concurring                    23-10463

Relatedly, assigning the burden of persuasion would not change the nature of what must be established. The statute demands that incompetence be established by a preponderance of the evidence. *See Id.* If we were to assign a burden—which again, I feel is unnecessary—we would be bound by the text to either require the government or the defendant to prove *incompetence*. It is thus perplexing that three circuits require the government to prove the defendant competent. *See United States v. Velasquez*, 885 F.2d 1076, 1089 (3d Cir. 1989); *United States v. Hutson*, 821 F.2d 1015, 1018 (5th Cir. 1987); *United States v. Frank*, 933 F.2d 1491, 1494 (9th Cir. 1991).

These circuits provide scant reasoning. The Third Circuit's decision in *Velasquez* cites precedent from 1976, which itself was based on a predecessor statute to § 4241 with entirely different language.[3] 885 F.2d 1076, 1089 (3d Cir. 1989) (citing *United States v. DiGilio*, 538 F.2d 972, 988 (3d. Cir 1976)). The Fifth Circuit also cited to precedent predating § 4241 and failed to grapple with the updated language. *See Hutson*, 821 F.2d at 1018 (asserting the government bears the burden and citing a 1981 case predating § 4241).

---

[3] That provision, § 4244, did not include language specifying whether competence or incompetence had to be established by a preponderance of the evidence. Act of Sep. 7, 1949, Ch. 525, 63 Stat. 686, 686–687 (1949). Section 4241 was added with the Insanity Defense Reform Act of 1984, at which point § 4244 was amended to only apply in the post-conviction, pre-sentence posture. Pub. L. No. 98–473, § 403(a), 98 Stat. 1837, 2057–2062 (1984). This Act was passed in the wake of would-be Reagan assassin John Hinkley's acquittal by reason of insanity. *United States v. Cameron*, 907 F.2d 1051, 1061 (11th Cir. 1990). *See also*, S. Rep. 98-225, 222, 1984 U.S.C.C.A.N. 3182, 3404.

23-10463                 TJOFLAT, J., Concurring                 7

And the Ninth Circuit, without conducting any analysis of its own, cited to the Fifth Circuit. *Frank*, 933 F.3d at 1494 (citing to *Hutson*, 824 F.2d at 1018).

## D

In § 4241, Congress spoke in terms of what must be shown, rather than who must show it. I do not think this was an accident. The Constitution and § 4241 prohibit a district court from trying an incompetent person. *Dusky v. United States*, 362 U.S. 402, 402 (1960); 18 U.S.C. § 4241(d). To the extent there is a 'burden,' then, it falls on the district judge to make the appropriate pretrial determination. As to the parties, competency hearings are not designed to be adversarial per se. Section 4241 allows either the defendant or the government to move for a competency hearing. 18 U.S.C. § 4241(a). And either party may argue either position.[4]

The mandatory elements of § 4241 are directed at the court, and they are stated plainly. If there is cause to believe the defendant may be incompetent, the court must grant a party's motion for a hearing to determine competency. 18 U.S.C. § 4241(a). If no such motion exists, the court must order the hearing *sua sponte*. *Id. See*

---

[4] Of course, it is common for the defendant to argue he is incompetent and the government to argue the opposite. But an incompetency finding is not a get-out-of-jail-free card. It merely suspends proceedings and hospitalizes the defendant until he is deemed competent to proceed. 18 U.S.C. 4241(d). If the defendant does not improve, he may remain institutionalized, subject to various other provisions of the Code. *See*, *e.g.*, 18 U.S.C. § 4246. It would not be unreasonable for a prosecutor to argue incompetence or for a defendant to argue competence.

*also*, *United States v. Wingo*, 789 F.3d 1226, 1236 (11th Cir. 2015) ("The plain language of Section 4241(a) . . . is unambiguous about the court's obligation to *sua sponte* hold a hearing if it has reasonable cause to believe the defendant may be incompetent; the court must conduct a hearing under those circumstances") (internal quotation marks omitted). Next, it must order a psychiatric evaluation by one or more licensed providers, as necessary. 18 U.S.C. § 4241(b); 18 U.S.C. § 4247(b). Finally, at the hearing, the court must decide whether, by a preponderance of the evidence, the defendant is incompetent. 18 U.S.C. § 4241(d). If the court cannot so find, the defendant must be found competent. *See id.* While parties are free to persuade the court one way or the other, allocating burdens should never impact a district court's determination.[5] For all of these reasons, I believe the statute speaks for itself and adding burdens would only complicate the matter.

---

[5] I concede there is one bizarre scenario where a burden could impact the outcome. If one party (say, the government) is assigned the burden to prove incompetence but prefers to argue the defendant is competent, the judge might have sufficient evidence to declare the defendant incompetent even though the burden-bearing party failed to carry out its burden. What should the court do then? This paradox further demonstrates why burdens do not belong in competency hearings.